TOWN OF STRATFORD *v.* ERIC CASTATER
(AC 33494)

DiPentima, C. J., and Bear and Bishop, Js.

Argued March 5—officially released July 3, 2012

*Frank B. Cochran*, for the appellant (defendant).

*Michael S. Casey*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant, Eric Castater, appeals from the denial of his motion for attorney's fees. Specifically, the defendant claims that the court (1) improperly concluded that the plaintiff, the town of Stratford, did not bring the underlying action in bad faith, (2) improperly concluded that General Statutes § 31-72[1] was inapplicable to the present case and (3)

---

[1] General Statutes § 31-72 provides: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. The Labor Commissioner may collect the full amount of any such unpaid wages, payments due to an employee welfare fund or such arbitration award, as well as interest calculated in accordance with the provisions of section 31-265 from the date the wages or payment should have been received, had payment been made in a timely manner. In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages, payments

failed to follow proper procedure in denying him attorney's fees.[2] We affirm the judgment of the trial court.

The facts underlying this appeal are set forth by this court in *Stratford* v. *Castater*, 136 Conn. App. 522, 46 A.3d 953 (2012), a related case released on the same date as this opinion. The following additional facts are necessary for the resolution of this appeal. In 2010, the plaintiff brought the underlying action in three counts: money had and received,[3] unjust enrichment and conversion. The action sought the return of $4744.38 that allegedly had been paid improperly to the defendant upon the termination of his employment. The court rendered judgment in favor of the defendant. Thereafter, the defendant filed a motion seeking an order of reasonable attorney's fees. The plaintiff filed an objection to this motion. The court denied the defendant's motion for attorney's fees. The defendant filed a motion to reconsider, which was denied. This appeal followed.

I

The defendant first claims that the court should have concluded that the plaintiff brought the underlying

due to an employee welfare fund or arbitration award, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages, arbitration awards or payments due to an employee welfare fund collected pursuant to this section to the appropriate person."

[2] The defendant also claims that the court abused its discretion under "all circumstances present," in denying his motion for attorney's fees. Because the court properly concluded that no common-law or statutory exception to the American rule applied here, we need not address this claim.

[3] "The action of *indebitatus assumpsit* for the recovery of money had and received, and for money paid . . . is an action of the common law, but, to a great extent, an equitable action, adopted for the enforcement of many equitable, as well as legal rights. And it is a fundamental principle of this action, that it lies for the recovery of money, which, *ex aequo et bono*, ought to be paid over to the plaintiff; and that the law, in case of such equity, will imply a promise to pay it." (Emphasis in original; internal quotation marks omitted.) *Westport* v. *Bossert Corp.*, 165 Conn. 410, 414, 335 A.2d 297 (1973).

action in bad faith.[4] Specifically, the defendant argues that the court should have found bad faith where (1) there were news reports that a subsequent political administration was threatening to file this action in order to scapegoat the defendant and carry out its feud with the previous political administration and (2) there was no legal basis for recovery under any of the causes of action alleged by the plaintiff. We disagree.

"The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country.

---

[4] The defendant also claims, essentially, that the court "failed to follow pertinent case law" in that it did not follow the "alternative" tests for the bad faith exception to the American rule set forth in *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 254–55, 828 A.2d 64 (2003). The defendant argues that under *Schoonmaker*, "if a party either seeks the action for oppressive reasons or is unable to articulate a good faith argument, the successful opponent may seek fees." In *Schoonmaker*, our Supreme Court stated that a "plaintiff who brings or maintains a frivolous action engages in bad faith litigation conduct" and may be liable for attorney's fees. *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 254. Our Supreme Court noted that it previously had adopted the definition of a frivolous action set forth in rule 3.1 of the Rules of Professional Conduct. Id. A comment to this rule had explained that an "action is frivolous . . . if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person *or* if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." (Emphasis in original; internal quotation marks omitted.) Id., 254–55.

Subsequent to *Schoonmaker*, however, our Supreme Court has stated that it has "declined to uphold awards under the bad-faith exception absent *both* clear evidence that the challenged actions are entirely without color *and* [are taken] for reasons of harassment or delay or for other improper purposes . . . ." (Emphasis added; internal quotation marks omitted.) *Maris* v. *McGrath*, 269 Conn. 834, 845, 850 A.2d 133 (2004). We need not address the defendant's claim because the court concluded that the plaintiff, although it did not prevail in the underlying litigation, asserted colorable claims *and* did not act in bad faith. Thus, we need not address the issue of whether the standard in *Schoonmaker* is still good law, because even under that standard, the court properly rejected his claim for attorney's fees.

. . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights. . . . This court also has recognized a bad faith exception to the American rule, which permits a court to award attorney's fees to the prevailing party on the basis of bad faith conduct of the other party or the other party's attorney. . . . *Broadnax* v. *New Haven*, [270 Conn. 133, 178, 851 A.2d 1113 (2004)]; id., 178–79 (trial court properly denied motion for attorney's fees in declaratory judgment action challenging practice of underfilling positions in city's fire department); see also *Maris* v. *McGrath*, 269 Conn. 834, 844, 850 A.2d 133 (2004) ([i]t is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons . . .); *Peterson* v. *Norwalk*, 152 Conn. 77, 80, 203 A.2d 294 (1964) (trial court properly denied plaintiff's request for attorney's fees in declaratory judgment action against city's public utility commission because [n]either the statutes nor the rules provide for an allowance for counsel fees in declaratory judgment actions)." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582–83, 923 A.2d 697 (2007).

Furthermore, "[s]ubject to certain limitations, a trial court in this state has the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated. . . . To ensure . . . that the award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear

evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . and a high degree of specificity in the factual findings of [the] lower courts. . . . Whether a claim is colorable, for purposes of the bad-faith exception, is a matter of whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established. . . . To determine whether the bad faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation. . . . As applied to a party, rather than to his attorney, a claim is colorable, for purposes of the bad faith exception to the American rule, if a reasonable person, given his or her firsthand knowledge of the underlying matter, could have concluded that the facts supporting the claim might have been established." (Citations omitted; internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, 131 Conn. App. 364, 369–70, 27 A.3d 395, cert. denied, 302 Conn. 947, 30 A.3d 1 (2011). "[W]e review the trial court's decision to award attorney's fees for abuse of discretion." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, supra, 270 Conn. 178.

We conclude that the court properly denied the defendant's claim for attorney's fees. Here, the court determined that the plaintiff's case against the defendant was not frivolous and, accordingly, that the defendant failed to satisfy the test for the bad faith exception to the American rule. The court noted that although it had concluded during the trial that the plaintiff "had failed to make out a prima facie case on the third count of the complaint, the court did not draw that conclusion

as to the first and second counts of the complaint
. . . ." The court also explained that the defendant misconstrued the court's decision in his favor as an implicit conclusion that the plaintiff had not presented colorable claims. The court stated that "[b]oth sides made arguments in good faith to the court regarding the applicability of the law to the facts proven." See *Gianetti* v. *Norwalk Hospital,* 304 Conn. 754, 816–17, 43 A.3d 567 (2012) (affirming denial of attorney's fees where trial court specifically found that defendant had not acted in bad faith); *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.,* supra, 282 Conn. 583 (trial court improperly awarded attorney's fees where court did not make finding of bad faith and no other exceptions to American rule applied); cf. *Hirschfeld* v. *Machinist,* supra, 131 Conn. App. 370 (trial court did not abuse discretion in imposing sanctions where court found plaintiff's actions were in bad faith).

The court also rejected the defendant's argument that the plaintiff's "objection to his request for permission to file a motion for summary judgment and his request to amend his answer, as well as its unwillingness to engage in any form of alternate dispute resolution, rise to the level of bad faith . . . ." See *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.,* supra, 282 Conn. 594 (trial court improperly granted attorney's fees where court found that plaintiff failed to prove that defendant acted in bad faith, and there was no claim of a statutory or contractual basis for award). The defendant argues that the plaintiff "brought this action fully aware that it was seeking to reopen a contract of employment that had been terminated to the satisfaction of both parties, without fraud and according to applicable statutory provisions relating to the payment ('cash-out') of benefits and to withholding taxes," citing General Statutes § 31-76k. As we have stated, however, the court rejected the defendant's argument that the

plaintiff brought the action in bad faith. The court also noted that the plaintiff was under no legal obligation to resolve its claims against the defendant through an alternative dispute resolution process. Thus, the court concluded that the defendant did not show that the plaintiff had acted in bad faith or that the plaintiff's action was frivolous. We therefore conclude, on the basis of our review of the record, that the court did not abuse its discretion in denying the defendant's request for attorney's fees.

## II

The defendant claims that the court improperly concluded that § 31-72 was inapplicable to his claim for attorney's fees. Specifically, the defendant argues that the court (1) should have considered the public policy expressed in § 31-72 when deciding whether the American rule should be applied to bar his claim for attorney's fees and (2) erred in holding that § 31-72 should be so strictly construed as to provide no support for his claim for attorney's fees. We disagree.

The defendant's claim presents a question of statutory interpretation, over which our review is plenary. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the

statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Fennelly* v. *Norton*, 294 Conn. 484, 492–93, 985 A.2d 1026 (2010).

Section 31-72 provides, in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs *and such reasonable attorney's fees as may be allowed by the court,* and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. . . ." (Emphasis added.)

The defendant's claim fails for two reasons. First, as noted previously, the court did not make a finding of bad faith, arbitrariness or unreasonableness. Our Supreme Court has stated: "Connecticut follows the American rule, a general principle under which, attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . In the present case, § 31-72 provides the statutory predicate for an award of reasonable attorney's fees to prevailing plaintiffs; it is well established, however, that it is appropriate for a plaintiff to recover attorney's fees, and double damages under that statute, *only when the trial court has found that the defendant acted with bad faith, arbitrariness or unreasonableness.*" (Citation omitted; emphasis added;

internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 268–69, 828 A.2d 64 (2003).

Second, the language of the statute does not support an award of attorney's fees under these facts. Here, the court noted that § 31-72 was inapplicable because the defendant "was paid his fringe benefits upon termination and did not have to file suit to collect them . . . ." The court, therefore, reasoned that § 31-72 only provides for the recovery of attorney's fees where the *employee* is the party making a claim against the employer under § 31-72, citing the principle that statutes providing for the recovery of attorney's fees are in derogation of the common law and are strictly construed. The defendant argues that because § 31-72 is a remedial statute and therefore is entitled to liberal construction; see *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 240; the principle of strict construction relating to attorney's fees should be disregarded. We conclude, to the contrary, that the court properly invoked the doctrine of strict construction because the underlying action does not fall within those actions envisaged by § 31-72. The plain language of § 31-72 specifically provides remedies for employees who bring civil actions against employers for unpaid wages. This statute does not encompass the present situation, where an employee was sued by an employer under theories of money had and received, unjust enrichment and conversion. See *Fennelly* v. *Norton*, supra, 294 Conn. 504–505 ("[W]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters *clearly brought*

*within its scope."* [Emphasis added; internal quotation marks omitted.]). Therefore, the court properly concluded that § 31-72 was inapplicable to the defendant's claim for attorney's fees.

## III

Finally, the defendant claims that the court improperly failed to follow proper procedure in denying his motion for attorney's fees. Specifically, the defendant argues that the court abused its discretion in failing to schedule a hearing on his motion to reargue or for reconsideration, as well as his motion for attorney's fees.[5] We disagree.

"Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion. . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Citation omitted; internal quotation marks omitted.) *Esposito* v. *Esposito,* 71 Conn. App. 744, 747, 804 A.2d 846 (2002).

Here, the defendant requested a hearing on his motion for attorney's fees for the first time in his motion for reconsideration. In the motion for reconsideration, the defendant's counsel specifically stated that "[o]n Thursday, March 31, 2011, counsel marked the motion 'take on the papers': no objection had been made."[6] It

---

[5] Although the defendant's brief does not expressly claim that the court should have held a hearing on the motion for attorney's fees, he does appear to assert this argument in his brief.

[6] The plaintiff filed a timely objection to the motion for attorney's fees, stating that "[i]f the court is inclined to award attorney's fees based on [the] defendant's assertion that this matter is frivolous, the plaintiff moves for a hearing to specifically address the charge." This request by the plaintiff specifically was conditioned on the court's inclination to award attorney's fees and has no bearing on the *defendant's* affirmative waiver of his right to a hearing.

is well established that "[t]he knowledge and admissions of an attorney are imputed to his client." *Lafayette Bank & Trust Co.* v. *Aetna Casualty & Surety Co.*, 177 Conn. 137, 140, 411 A.2d 937 (1979). Thus, even assuming that the defendant had a right to a hearing on his motion for attorney's fees, he waived that right when his counsel marked the motion for attorney's fees " 'take on the papers' "; the later request for a hearing on the motion for reconsideration, therefore, was ineffective. See, e.g., *LPP Mortgage, Ltd.* v. *Lynch*, 122 Conn. App. 686, 697–98, 1 A.3d 157 (2010) (defendants waived right to challenge award of attorney's fees by expressly approving court's formula). The defendant cites no authority, nor are we aware of any, in support of his argument that the trial court was obligated to hold a hearing on the motion for reconsideration itself. "[A] motion to reargue . . . is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001). Therefore, we conclude that the court did not abuse its discretion in not holding a hearing on the defendant's motion for attorney's fees and on his motion to reargue or for reconsideration.

The judgment is affirmed.

In this opinion the other judges concurred.