MONROE NATIONAL BANK vs. ABIJAH CATLIN, JR.

First Judicial District, Hartford, May Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

Money paid voluntarily with full knowledge of the facts, in response to a demand based upon a claim of right and partly to discharge a recognized moral obligation and to avoid litigation, cannot be recovered back, although the payer may have been under a mistake as to his legal liability.

Money paid under a mistake of law may sometimes be recovered back; but only when the recipient has obtained an unfair advantage over the other by reason of such mistake, and has no right in good conscience to retain the money.

A broker in Louisiana from whom the defendant had ordered cotton, deposited with the plaintiff bank, for collection, drafts on the defendant for the purchase price, together with forged bills of lading purporting to represent the cotton. Both plaintiff and defendant supposed the bills of lading to be genuine. Defendant paid the drafts to plaintiff, and plaintiff paid over the amount to the drawer. On discovery of the forgery the defendant demanded of the plaintiff repayment of the amount, and threatened suit if it were not paid. Believing itself to be both legally and morally bound to do so, the plaintiff repaid the money to the defendant. *Held* that the dispute having once been fairly settled by the parties, an action could not now be maintained to recover the money upon the ground that it had been paid by the plaintiff under a mistake as to its legal liability.

Whether the plaintiff was legally bound to repay the money to the defendant on discovery of the forgery, *quære*.

This court may, in its discretion, pass upon questions which are not specifically assigned as the statute (§ 802) requires.

Argued May 5th—decided June 8th, 1909.

ACTION to recover money claimed to have been paid by mistake, brought to and tried by the Superior Court in

Hartford County, *Shumway, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The defendant, a dealer in cotton in Hartford, bought of one Bandy, a cotton broker in Monroe, Louisiana, some cotton. Bandy drew two drafts on the defendant for the purchase money, attached thereto forged bills of lading, and delivered the drafts, with the bills of lading so attached, to the plaintiff, with whom he banked, for collection. No cotton was shipped. In due course these drafts and bills of lading came into the hands of a Hartford bank for presentation to the defendant for payment. They were presented to him, and he, supposing that the bills of lading were genuine and that the cotton had been shipped, as represented therein, paid the drafts and retained the bills of lading. At that time he had no knowledge whether the drafts had been deposited with the plaintiff for collection or had been discounted by the plaintiff. The defendant supposed that the bills of lading were genuine, and relied in part upon the fact that the plaintiff was located in Monroe, and would satisfy itself that they were so. The Hartford bank transmitted the money paid by the defendant to the plaintiff, who placed it to the credit of Bandy, and later, but before the forgery of the bills of lading was discovered, Bandy withdrew from the plaintiff bank his whole balance, including the money so credited. The defendant, not receiving any cotton, made inquiries, and some three months after his payment of the drafts discovered the forgeries. He thereupon employed a lawyer of Monroe to obtain repayment of the money paid upon the drafts. The lawyer made demand upon the plaintiff for such repayment, on the ground that the bills of lading were forged and the drafts paid under a mistake of fact. He told the plaintiff that in his opinion it was legally bound to make repayment, and that, if it did not, he should bring suit to recover the money back. The officers of the plaintiff, believing that the

defendant had paid the money upon the drafts under a mistake of fact, that under the circumstances it was morally bound to refund the money, that it was also legally liable to do so and that it was its duty to do so, thereupon, in February, 1905, paid the lawyer as representing the defendant the sum represented by the two drafts, to wit, $2,277.90. The defendant now has this money and refuses to repay it to the plaintiff. Demand therefor was made in November, 1905. When the plaintiff received the drafts and bills of lading from Bandy it supposed that the latter were genuine.

*Benedict M. Holden* and *Newell Jennings,* for the appellant (plaintiff).

*Charles E. Perkins,* with whom was *Leonard Morse,* for the appellee (defendant).

PRENTICE, J. This appeal contains no assignment of error specifically made, as the statute requires. It therefore properly presents no matter for our determination. General Statutes, § 802. We, however, have the power to waive the defect, and, under the circumstances of the case, we have deemed it best to decide the question, which, as the defendant fully understood, the plaintiff desired to present to our consideration, and which both parties have exhaustively argued.

This question is the general one of the right of the plaintiff, under the circumstances disclosed by the finding, to recover back from the defendant a sum of money which the former, prior to the commencement of the action, had paid to the latter. In deciding this question we have no occasion to consider the incidental one, to which much of the argument was addressed, as to whether or not the plaintiff, when it made the payment in question, was under a legal obligation to make it. If it was under such an obligation, it confessedly has no present right of action.

No more has it, under the circumstances presented by the other alternative, for which the plaintiff contends. The payment to the defendant was made with full knowledge on the plaintiff's part of all the facts of the situation. It was made voluntarily and deliberately. It was made in the belief on the plaintiff's part that, in view of the circumstances, it was under a moral obligation, at least, to make it. It was made in response to a demand presented by the defendant's attorney. It was made after information from the attorney that suit would be brought, if the demand were refused. We have, therefore, this situation: that it is sought to recover back money paid to another voluntarily, with full knowledge of the facts, after consideration, in response to a demand based upon a claim of right, in recognition of a moral duty to satisfy that demand and to avoid litigation. The plaintiff's change of mind and heart has come too late. It cannot now reopen the dispute once fairly settled. There is no claim of fraud, misrepresentation or concealment on the part of the defendant or his attorney in obtaining the money. The threat of suit did not constitute duress. *Morris* v. *New Haven,* 78 Conn. 673, 675, 63 Atl. 123. Any failure on the plaintiff's part to understand the full extent of the parties' strict legal rights under the known facts, cannot help to reopen the once closed door of controversy, for one reason, because its conception of its legal obligation was only one of the moving causes of its favorable response to the appeal to recompense the defendant for what he had lost through the forged bills of lading. And there is another reason, which of itself must be conclusive. Notwithstanding that the plaintiff may have been ignorant of its strict legal rights when it paid over the money, the defendant is not thereby placed in the position of now holding that which he cannot in good conscience retain. It is true that money paid under a mistake of law can sometimes be recovered back. It is not true that it always, or generally, can. Were it so, there would be all too

few money controversies ended save through the medium of litigation. The law favors the private settlement of such matters, and it does not throw around that process the hazards and uncertainties which would attend the principle that no voluntary satisfaction, settlement or compromise of a demand can be made which will have any efficacy in the face of a contention that the law was not fully known to the parties. Even the wisest lawyer might often find himself helpless to accomplish a permanent result in the way of the settlement of business differences in the presence of such conditions. The pertinent principle, which has had the approval of this court, is "that, when money is paid by one, under a mistake of his rights and his duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back, . . . whether such mistake be one of fact or of law." *Northrop* v. *Graves*, 19 Conn. 548, 554; *Mansfield* v. *Lynch*, 59 id. 320, 327, 22 Atl. 313. The appeal to which the courts listen is one to the principles of equity. It is only when one has obtained such an advantage over another by reason of that other's mistaken view of his legal rights that it would, under the circumstances, be unconscionable for him to retain it, that a situation created by the fair conduct of the parties will be disturbed. *Park Bros. & Co.* v. *Blodgett & Clapp Co.*, 64 Conn. 28, 34, 29 Atl. 133. There is no such situation here. There is not the slightest inequity in the defendant's retaining money paid to him as this was. It was fairly got and may be fairly kept.

There is no error.

In this opinion the other judges concurred.