TOWN OF STRATFORD *v.* ERIC CASTATER
(AC 33314)

DiPentima, C. J., and Bear and Bishop, Js.

Argued March 5—officially released July 3, 2012

*Michael S. Casey*, for the appellant (plaintiff).

*Frank B. Cochran*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, the town of Stratford, appeals from the judgment of the trial court, rendered in favor of the defendant, Eric Castater, after a court trial. On appeal, the plaintiff claims that the court improperly (1) concluded that its claim for money had and received was unavailing because the cash out benefits were authorized, (2) concluded that the payment was not detrimental to the plaintiff and (3) balanced the equities of the two parties.[1] We affirm the judgment of the trial court.

The following procedural history and facts, as found by the court, are relevant to our discussion of the issues

---

[1] Although the plaintiff organizes its appeal into three separate claims, we do not address its third claim regarding the balancing of the equities independently because we address the merits of that claim throughout our discussion of the first two claims.

on appeal. From March 9, 2009, through December 11, 2009, the defendant was employed as the assistant to James Miron, who served as the plaintiff's mayor from December 11, 2005, through December, 2009. The defendant's responsibilities required him to work in close concert with the mayor. He was a salaried full-time employee and entitled to benefits pursuant to policies incorporated in his employment agreement. The employment agreement, in turn, provided that although the defendant's employment could be terminated without notice during the first six months of his employment, he could be discharged after the initial six months only with sixty days advance notice or immediately without advance notice subject to the plaintiff's paying "full salary and benefits for the sixty (60) day calendar period immediately following your date of termination." This written employment contract, in turn, incorporated by reference an appendix, effective July 1, 2008, that listed the benefits package applicable to the defendant's position as a nonunion aide to the mayor. These benefits included five personal days per calendar year, ten professional development days, ten vacation days and ten days of sick leave, all prorated in the first year of employment based on the starting month and accruing as of January 1 after the initial year. The agreement provided, as well, that unused vacation and sick leave could be "cashed out" upon termination of employment, but it did not contain a similar provision regarding unused personal and professional development days. It did provide that "[p]erfect attendance days are eliminated." Finally, and significantly, paragraph XX of the agreement contained the following provision: "This benefits description is for information only and may be changed, altered or modified by the [plaintiff] prospectively in the discretion of the Mayor. Except as otherwise provided in an employment letter, any such revisions shall not adversely affect leave balance accruals or payouts. Except for that limitation, any such

revisions will supercede those provided in this package. Employees will be notified of any such changes by communication from the Mayor, the CAO or the HR Director."[2]

Once Miron lost his bid for reelection in November, 2009, he decided to terminate the defendant's employment. By letter dated December 4, 2009, Miron advised the defendant that his employment was terminated effective December 11, 2009, and that the plaintiff would pay "full salary and benefits for the next sixty calendar" days. On the same date, Miron retroactively rescinded the provision in the agreement eliminating payment for perfect attendance days as it related to employees in the defendant's category. A contemporaneous termination notice approved by Miron set forth the categories and accrued hours of benefits and salary that the defendant was to receive as "cash-out" benefits.[3] It was Miron's view at the time, and the defendant's during litigation, that the mayor had broad authority to modify the employment agreement to include termination benefits for professional development days and perfect attendance. On December 11, 2009, the plaintiff issued payments to the defendant in accordance with the terms of his termination notice as approved by Miron, the mayor at the time.

---

[2] At trial and in their appellate briefs, both parties also made reference to provisions of the town charter. The plaintiff argues that relevant charter provisions indicate that the town council has overarching authority regarding financial and personnel matters, while the defendant argues that the charter clearly indicates that the mayor serves as the plaintiff's chief administrative officer and, as such, has the authority to act as the mayor did in this instance. For reasons set forth in this opinion, we need not resolve the parties' disputed claims regarding the mayor's authority because we find no abuse of discretion in the court's determination that it would not be equitable to require the defendant to return the disputed disbursements to the plaintiff.

[3] The notice included the following: "Vacation 150.00 [hours] . . . Perfect Attendance Days 22.50 [hours] . . . Sick Leave 137.50 [hours] . . . Professional [Development] Days 150.00 [hours] . . . Notice Provision 330.00 [hours]."

Later, in January, 2010, after a new administration had taken office, the plaintiff notified the defendant that it was contesting the scope and extent of the benefits he had received as part of his termination package. Also, based on the distribution received by the defendant in conjunction with the termination of his employment, he was informed by the state department of labor's unemployment compensation department (department) that he would be ineligible for unemployment compensation through March 13, 2010. Notwithstanding the plaintiff's position that it overpaid the defendant in December, 2009, the defendant made no repayment to the plaintiff. He did not make any claims against the plaintiff arising from the termination of his employment or tenure as a municipal employee, and he did not appeal from the decision of the department concerning his date of eligibility for unemployment compensation.

The plaintiff thereafter brought this action. In the first count, the plaintiff alleged a cause of action for money had and received. More specifically, the plaintiff claimed that it overpaid the defendant in the amount of $4744.37, that it had no moral or legal obligation to make the overpayment, that it was entitled to be repaid the amount of the overpayment, and that, even though the defendant in equity and good conscience had no right to retain the overpayment, he refused to reimburse the plaintiff for the amount of the overpayment. In the second count, the plaintiff repeated the operative allegations of the first count and added to them the allegation that the defendant did not earn and was not otherwise entitled to the overpayment and that his continued retention of the unwarranted benefit resulted in unjust enrichment. Finally, in count three, sounding in conversion, the plaintiff repeated the allegations of count one and added to them a claim that although the plaintiff had demanded repayment of funds rightly

belonging to it, the defendant had assumed and exercised ownership and control over such funds to the plaintiff's detriment.

In response to the complaint, the defendant filed an answer, generally denying the inculpating allegations of the complaint. Additionally, the defendant filed three special defenses. In his first special defense, he alleged that he had accepted payment in full settlement of claims he could have made against the plaintiff, including the termination of his employment contract, that the plaintiff had informed the state of all payments made to him for purposes of calculating his eligibility for unemployment compensation, and that the conduct of the parties amounted to an accord and satisfaction for all claims arising from his employment and termination. The defendant alleged in his second special defense that he had paid all applicable federal and state income taxes on the amounts paid to him by the plaintiff and that he did not appeal from the decision of the department denying benefits to him for the period of time encompassed by the disputed distribution to him. Finally, in his third special defense, the defendant claimed that the plaintiff's newly elected mayor, shortly after he took office, cast aspersions on him by publicly stating that he was going to seek repayment of amounts improperly paid to the defendant and, as a result, the defendant's reputation had been sullied, requiring him to seek counsel and making it more difficult for him to secure employment. The defendant claimed, in this special defense, that, because of this conduct, the plaintiff was guilty of unclean hands in its quest for repayment of funds paid to him. Finally, in a pleading captioned "Motion for Judgment," the defendant sought not only judgment on his behalf but an award of counsel fees from the plaintiff.

During trial, the court dismissed the third count of the complaint for failure to make out a prima facie

case and thereafter rendered judgment in favor of the defendant on counts one and two of the complaint.[4] The court concluded, as to the first count, that the payments to the defendant were authorized and, to the extent that the defendant was overpaid by Miron because he exceeded his authority or made factual mistakes leading to the amount of the benefits paid, the plaintiff, nevertheless, did not have a superior right in equity to repayment by the defendant. Balancing the equities, the court determined that it would be inequitable to require the defendant to return the disputed payments to the plaintiff pursuant to the plaintiff's claim for money had and received. Additionally, as to the count alleging unjust enrichment, the court concluded that the plaintiff suffered no detriment in making the disputed payments to the defendant and that the defendant, moreover, had paid taxes on the amounts received and that his receipt of unemployment benefits was delayed due to his receipt of the disputed benefits. Therefore, the court concluded, the equities balanced in favor of the defendant retaining the distribution he received from the plaintiff. This appeal followed.

I

The plaintiff claims that the court improperly concluded that its claim for money had and received was inapplicable because the cash out benefits were authorized. More specifically, the plaintiff contends that the mayor did not have the broad powers to modify the employment agreement. We need not reach the merits of the plaintiff's claim regarding the mayor's authority because we affirm the decision of the trial court on the

---

[4] The court also denied the defendant's motion for counsel fees after which the defendant separately appealed, claiming that the court's order denying his request for fees was improper. The defendant's appeal is the subject of a related opinion published simultaneously with this opinion. See *Stratford* v. *Castater*, 136 Conn. App. 535, 46 A.3d 953 (2012).

ground that the court properly exercised its equitable powers.

As a prelude to our assessment of the court's decision, we set forth the parameters of the relevant decisional law. An action for money had and received has an ancient pedigree. "Common-law courts construed the action of general or indebitatus assumpsit broadly so as to be applicable on equitable or moral grounds. From the early seventeenth century, common-law courts implied an assumpsit, or promise, whenever a contractual debt was found to exist. . . . Ultimately the action of general assumpsit was extended to contracts implied in law (now referred to as quasi contracts), which included contracts founded on a statutory duty to pay money, in which the assumpsit was a pure fiction. . . . Courts frequently upheld actions in general assumpsit when the defendant would otherwise be unjustly enriched. . . . Thus, this court [has] held that when money is paid by one on the basis of a mistake as to his rights and duties and the recipient has no right in good conscience to retain the money, an action of indebitatus assumpsit may be maintained to recover the money, regardless of whether the mistake was one of fact or of law. . . . The action of indebitatus assumpsit for the recovery of money had and received, and for money paid . . . is an action of the common law, but, to a great extent, an equitable action, adopted for the enforcement of many equitable, as well as legal rights. And it is a fundamental principle of this action, that it lies for the recovery of money, which, ex aequo et bono, ought to be paid over to the plaintiff; and that the law, in case of such equity, will imply a promise to pay it." (Citations omitted; internal quotation marks omitted.) *Westport* v. *Bossert Corp.*, 165 Conn. 410, 413–14, 335 A.2d 297 (1973). In a similar vein, our Supreme Court opined: "The action for money had and received is an equitable action to recover back money paid by

mistake where the payor is free from any moral or legal obligation to make the payment and the payee in good conscience has no right to retain it. Is the plaintiff in this action, as between it and the defendant, in equity and good conscience entitled to the money? If it is, then it is entitled to recover. The real ground of recovery is the equitable right of the plaintiff to the money." *Bridgeport Hydraulic Co.* v. *Bridgeport*, 103 Conn. 249, 261–62, 130 A. 164 (1925).

Furthermore, "[e]quitable remedies are not bound by formula but are molded to the needs of justice. . . . The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Stewart* v. *King*, 121 Conn. App. 64, 71, 994 A.2d 308 (2010).

In the case at hand, the court determined that the mayor had the authority to make the disputed payments and that the payee had the right, in equity, to retain the payments. As to the mayor's authority, the plaintiff argued that the town charter (charter) gives to the town council "the power to make, alter and repeal resolution[s] and ordinances . . . relative to the appropriation of [t]own funds" and that the charter provides, as well, that the council has the authority to "fix [the] salaries . . . of all . . . Mayoral appointees [and] shall further have the power to approve or disapprove wage and salary schedules recommended by the Mayor for administrative department employees . . . ." (Citation omitted; internal quotation marks omitted.) In

response to this argument, however, the court pointed out: "These provisions not only fail to cover the issue of termination of employment, but also do not address the extent of the mayor's authority regarding personnel decisions." The court noted, as well, that the charter gives the mayor broad authority to administer and supervise "all departments, agencies and offices of the [plaintiff]" and specifically to "act as the bargaining agent . . . in all labor and employment matters . . . ." Finally, the court noted, the charter provides: "The power to appoint persons to employment, granted to the Mayor by this charter, shall be exercised solely and exclusively by him or her." From the charter language, the court concluded: "These provisions suggest a broad grant of authority to the town's mayor, by virtue of the town charter, regarding personnel decision[s]. The appendix to the employment agreement . . . rein-forces that conclusion in the provision which specifies that the mayor can modify, change or alter the benefit descriptions in his discretion." (Citation omitted; internal quotation marks omitted.)

Although the plaintiff contests the court's conclusions regarding the mayor's authority to alter the defendant's benefits package unilaterally, we need not resolve the issue of the mayor's authority in order to resolve the appeal. Because, in this form of action, the plaintiff must prove both that the mayor lacked the authority to make a payment and that it would be inequitable for the payee to retain the payment, we may affirm the court's judgment upon proof either that the payment was authorized or that its retention by the defendant is equitable under all the circumstances. Consequently, if we conclude that the court properly determined that the defendant has no obligation, in equity, to return the payment, we need not address the question of whether the payment was authorized or the product of a mistake by Miron. We turn, then, to the court's assessment of

whether the defendant had any obligation to repay any funds to the plaintiff.

In making this assessment, the record makes it amply clear that the court balanced the equities. The court stated: "Even if Miron were mistaken as to the extent of his authority or if factual mistakes were made in calculating the benefits, there is no evidence that [the defendant] knew of those mistakes . . . or demanded or induced the payment. Thus, the court concludes [the defendant] acted in good faith and justifiably accepted the 'cash out' benefits paid to him upon his termination. Furthermore, the defendant not only paid taxes on the 'cash out' benefits, but their receipt delayed his eligibility date to collect unemployment benefits. In balancing the equities, as the court is required to do for this cause of action, the court concludes that [the defendant] has a right 'in good conscience' to retain the 'cash out' benefits that he received from the [plaintiff]." (Citation omitted.)

On the basis of the court's factual findings, as amply supported by the record, we do not find that the court abused its discretion in balancing the equities in favor of the defendant's retention of the disputed payments. Thus, the court did not err in deciding, as a matter of equity, that the defendant had no obligation to repay the plaintiff based on its claim of money had and received.

II

The plaintiff next claims that the court improperly rendered judgment in favor of the defendant on its claim for unjust enrichment. More specifically, the plaintiff contends that the court improperly concluded that the payment to the defendant was not detrimental to the plaintiff. We disagree.

Although related to the plaintiff's first claim because it is similarly "broad and flexible" and, like that claim, is based on "the principle that it is contrary to equity and good conscience for a defendant to retain a benefit

that has come to him at the expense of the plaintiff";
*Gagne* v. *Vaccaro*, 255 Conn. 390, 409, 766 A.2d 416
(2001); a claim of unjust enrichment has different
requirements. "A right of recovery under the doctrine
of unjust enrichment is essentially equitable, its basis
being that in a given situation it is contrary to equity
and good conscience for one to retain a benefit which
has come to him at the expense of another. . . . With
no other test than what, under a given set of circum-
stances, is just or unjust, equitable or inequitable, con-
scionable or unconscionable, it becomes necessary in
any case where the benefit of the doctrine is claimed,
to examine the circumstances and the conduct of the
parties and apply this standard. . . . Unjust enrich-
ment is, consistent with the principles of equity, a broad
and flexible remedy. . . . Plaintiffs seeking recovery
for unjust enrichment must prove (1) that the defen-
dants were benefited, (2) that the defendants unjustly
did not pay the plaintiffs for the benefits, and (3) that
the failure of payment was to the plaintiffs' detriment."
(Citations omitted; internal quotation marks omitted.)
*Hartford Whalers Hockey Club* v. *Uniroyal Goodrich
Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994).
It is the plaintiff's burden to prove the elements of a
claim of unjust enrichment, including that the defendant
was benefited. See *New Hartford* v. *Connecticut
Resources Recovery Authority*, 291 Conn. 433, 451–52,
970 A.2d 592 (2009).

"[T]he determinations of whether . . . particular
[facts constitute the elements of unjust enrichment] are
subject only to a limited scope of review on appeal.
. . . Those findings must stand, therefore, unless they
are clearly erroneous or involve an abuse of discretion.
. . . This limited scope of review is consistent with the
general proposition that equitable determinations that
depend on the balancing of many factors are committed
to the sound discretion of the trial court." (Citations

omitted; internal quotation marks omitted.) *Ayotte Bros. Construction Co.* v. *Finney,* 42 Conn. App. 578, 581, 680 A.2d 330 (1996). Finally, unjust enrichment results when "it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff." (Internal quotation marks omitted.) *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597, 489 A.2d 1034 (1985); see also *Pokorny* v. *Getta's Garage,* 219 Conn. 439, 462, 594 A.2d 446 (1991).

As with the claim for money had and received, the court determined that the plaintiff had failed to demonstrate that the defendant had been unjustly enriched by the amount and character of the plaintiff's "cash out" payment to him. The court determined, as well, that the plaintiff had not suffered any detriment in making the disputed payment to the defendant. It is clear from the court's comprehensive and thorough memorandum of decision that the court considered all the factual circumstances and factors relevant to the plaintiff's unjust enrichment claim, as it did in regard to the related claim for money had and received, in arriving at its conclusion that it would be equitable for the defendant to retain the disputed payments. As to the plaintiff's claim that payment of the disputed benefits was adequate proof of detriment itself, the court concluded that the plaintiff did not suffer any detriment by making the disputed payments and that, because the defendant paid taxes on the benefits received and his receipt of unemployment benefits was delayed by reason of his receipt of the disputed funds, it would be inequitable to require him to make restitution to the plaintiff.

On the basis of our review of the record, and the court's thorough analysis of the issues at hand, we conclude that the court did not abuse its discretion in denying the plaintiff's claims.

The judgment is affirmed.

In this opinion the other judges concurred.