******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF STRATFORD *v.* DEVRON WILSON
(AC 35823)

Lavine, Bear and West, Js.*

*Argued March 7—officially released June 17, 2014*

(Appeal from Superior Court, judicial district of Fairfield, Hon. Howard T. Owens, Jr., judge trial referee.)

*Michael S. Casey*, for the appellant (plaintiff).

*Frank B. Cochran*, for the appellee (defendant).

*Opinion*

LAVINE, J. This appeal is one of three cases in which the plaintiff, the town of Stratford (town), sought to recoup what it claimed were excessive "cash-out" benefits paid to former town employees that were authorized by the town's then mayor.[1] The town appeals from the judgment of the trial court rendered in favor of the defendant, Devron Wilson, on the town's complaint and the defendant's counterclaim. On appeal, the town claims that the court improperly (1) concluded that the mayor had not exceeded his authority in authorizing the defendant's "cash-out" benefits, (2) found that it had failed to prove that the "cash-out" benefits were paid to its detriment, (3) balanced the equities to conclude that the defendant had retained the "cash-out" benefits in good conscience, and (4) awarded the defendant attorney's fees. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to this appeal. On May 13, 2010, the town served the defendant with a complaint alleging three counts: money had and received, unjust enrichment, and conversion.[2] In its complaint, the town alleged, in relevant part, that it employed the defendant under a written employment agreement (agreement) pursuant to which it paid the defendant a salary and extended benefits. On December 11, 2009, the town terminated the defendant's employment and paid him his salary and accrued benefits consistent with the agreement. The complaint also alleged that, in addition to the payments made under the agreement, the town paid the defendant moneys in excess of those to which he was entitled. The overpayment was in the amount of $4803.86. Moreover, the complaint alleged that the town was free from any moral or legal obligation to make the overpayment, and the defendant had no right in equity and good conscience to retain the overpayment. Although the town demanded that the defendant return the overpayment, he failed to do so. In his answer, the defendant denied that he received an overpayment to which he was not entitled and that he had no right to retain the alleged overpayment. He also pleaded three special defenses.[3]

Subsequently, on May 3, 2012, the defendant filed a setoff and counterclaim. The counterclaim alleged, in part, that the plaintiff lacked probable cause to commence the action, which was brought for the "purpose of conducting a political vendetta and with the intended effect of imposing an unacceptable cost of defense." On October 19, 2012, the defendant amended his answer to plead a fourth special defense, namely, collateral estoppel.[4]

Prior to trial, the parties stipulated to the following facts. From March 30, 2009 through December 11, 2009, the defendant was employed as an assistant to James

R. Miron, who served as the town's mayor from December 11, 2005 through December 12, 2009.[5] The defendant was a full-time, salaried employee under a written, at-will agreement that entitled him to benefits pursuant to certain policies incorporated into the agreement. Miron terminated the defendant's employment and personally approved the termination notice that listed the categories and hours to be used to determine the accrued benefits to be paid to the defendant. In his last paycheck, the defendant was paid for accrued benefits, referred to as a "cash-out," which were calculated using a nominal hourly rate of $25.6411. The "cash-out" was subject to withholding and other deductions. The defendant made no formal or written claim for the "cash-out" and has made no claim against the town for additional compensation or benefits.

The parties also stipulated that a new town administration took office on December 14, 2009, under John A. Harkins, the newly elected mayor. In January, 2010, the town sent the defendant a W-2 form that included the "cash-out" for social security purposes and itemized deductions. On or about February 1, 2010, the defendant received a written notice from Assistant Town Attorney Kevin Kelley stating that the town claimed a debt of $4802 for "cash-out" benefits to which he was not entitled.

On the first day of trial, December 19, 2012, the court heard evidence and oral arguments on the defendant's collateral estoppel special defense. In a memorandum of decision issued on January 30, 2012, the court declined to apply collateral estoppel to the facts of this case.[6] The court continued the trial on March 5, 2013, and issued a memorandum of decision on June 10, 2013. The court found the town's essential claim to be that, prior to the end of his term as mayor, Miron disbursed moneys to the defendant beyond that to which he was entitled under the agreement and that the town council had not approved that portion of the "cash-out" that was not authorized under the town charter (charter).[7] With regard to the town's claim of money had and received, after construing numerous sections of the charter and the agreement, the court concluded that Miron had not exceeded his authority, and therefore, the town had not mistakenly paid the defendant.

The court also found that the town provided the defendant with a W-2 form at the end of Miron's term that included the "cash-out" as part of his wages and that the defendant had paid taxes on the "cash-out." Moreover, the defendant did not receive notice that the town believed that it had overpaid him until he read about it in a newspaper and the newspaper article caused the defendant difficulty in securing new employment.[8] The court concluded that the defendant had retained the "cash-out" in good conscience. As to the unjust enrichment count, the court found that the defen-

dant had paid taxes on the money and that it would be inequitable to apply the doctrine of unjust enrichment to recoup the "cash-out" from him. The court, therefore, rendered judgment in favor of the defendant on the plaintiff's complaint. In adjudicating the defendant's counterclaim, the court found in favor of the defendant and awarded him $3835 for attorney's fees.

The town appealed from the judgment, claiming that Miron did not have the unilateral authority to alter the agreement and that it is inequitable, unconscionable, and unjust for the defendant to retain the "cash-out." The town also claims that the court improperly awarded attorney's fees to the defendant.

We first set forth the applicable standard of review. "[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Shevlin* v. *Civil Service Commission*, 148 Conn. App. 344, 353–54, 84 A.3d 1207 (2014).

I

In count one of its complaint, the town alleged money had and received against the defendant. On appeal, the town has raised two claims related to that cause of action: the court erroneously concluded that (1) Miron did not exceed his authority when he authorized the "cash-out" and (2) the defendant retained the "cash-out" in good conscience. In an action for money had and received, the plaintiff must prove *both* the lack of authority to authorize the payment *and* that it is inequitable for the recipient to retain it. See *Stratford* v. *Castater*, 136 Conn. App. 522, 531, 46 A.3d 945, cert. denied, 307 Conn. 903, 53 A.3d 218 (2012). Because there are two prongs to the cause of action, this court may affirm the judgment of the trial court on either prong. Id. We conclude that the court properly determined that the defendant retained the "cash-out" in good conscience, and therefore, we need not determine whether Miron *lacked* authority to authorize the "cash-out" under the charter, as the plaintiff argues, or that he *possessed* authority to do so under the agreement, as the defendant claims.

In *Castater*, this court outlined the development of the common-law cause of action for money had and received. Id., 529. Our Supreme Court has stated that "when money is paid by one on the basis of a mistake as to his rights and duties and the recipient has no right in good conscience to retain the money, an action of indebitatus assumpsit may be maintained to recover

the money, regardless of whether the mistake was one of fact or of law. . . . The action of indebitatus assumpsit for the recovery of money had and received and for money paid . . . is an action of the common law, but, to a great extent, an equitable action, adopted for the enforcement of many equitable, as well as legal rights." (Internal quotation marks omitted.) Id., quoting *Westport* v. *Bossert Corp.*, 165 Conn. 410, 413–14, 335 A.2d 297 (1973). Stated another way, "[t]he action for money had and received is an equitable action to recover back money paid by mistake where the payor is free from any moral or legal obligation to make the payment and the payee in good conscience has no right to retain it. Is the plaintiff in this action, as between it and the defendant, in equity and good conscience entitled to the money? If it is, then it is entitled to recover. The real ground of recovery is the equitable right of the plaintiff to the money." *Bridgeport Hydraulic Co.* v. *Bridgeport*, 103 Conn. 249, 261–62, 130 A. 164 (1925).

"[E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion." (Internal quotation marks omitted.) *Stewart* v. *King*, 121 Conn. App. 64, 71, 994 A.2d 308 (2010).

"We will reverse a trial court's exercise of its equitable powers only if it appears that the trial court's decision is unreasonable or creates an injustice. . . . [E]quitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Croall* v. *Kohler*, 106 Conn. App. 788, 791–92, 943 A.2d 1112 (2008).

Having reviewed the record, we conclude that the court properly balanced the equities between the town and the defendant. The parties stipulated that the defendant was employed by the town pursuant to an at-will agreement and that Miron terminated the defendant's employment on December 11, 2009. Miron authorized the "cash-out" payment to the defendant, and the town paid it. In January, 2010, under the Harkins administration, the town sent the defendant a W-2 form for income tax purposes. The W-2 form included the "cash-out" as

wages the defendant was paid. Thereafter, the town sent the defendant a written notice of claim on or about February 1, 2010. The defendant made no claim for the "cash-out" nor did he make a claim against the town for additional compensation. Moreover, the court found that the defendant paid taxes on the wages reported on the W-2 form provided by the town.

Not only does the parties' stipulation as to the facts and the court's findings demonstrate that the town intentionally terminated the defendant's employment and knowingly—not mistakenly—paid him the "cash-out" authorized by Miron, but the town also admitted those facts in its complaint and is bound by them. See *Rudder* v. *Mamanasco Park Assn., Inc.*, 93 Conn. App. 759, 769, 890 A.2d 645 (2006) (parties bound by their pleadings). Moreover, the town confirmed the wages it paid the defendant, including the "cash-out," by sending him a W-2 form. Approximately two weeks later, however, the town, acting under the Harkins administration, caused a letter to be sent to the defendant informing him that the town was seeking to collect a debt predicated on the "cash-out." We agree with the court that the equities of this situation tip in favor of the defendant. "The plaintiff's change of mind and heart has come too late." *Monroe National Bank* v. *Catlin*, 82 Conn. 227, 230, 73 A. 3 (1909) (plaintiff sought to recover money voluntarily paid with knowledge of facts). We therefore conclude that the court's finding that the defendant retained the "cash-out" in good conscience was not erroneous.

## II

The second count of the complaint sounds in unjust enrichment. On appeal, the town claims that "[t]here is sufficient evidence to support a finding that any excess[ive] payments to the defendant were to [its] detriment." We disagree.

In its memorandum of decision regarding the town's claim of unjust enrichment, the court found that the town had failed to prove that the defendant was not entitled to the "cash-out" or that the "cash-out" payment was made to its detriment. Moreover, because the defendant had paid taxes on the "cash-out," it would be inequitable to require him to make restitution to the town. See *Stratford* v. *Castater*, supra, 136 Conn. App. 534.

"Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. . . . In order for the plaintiff to recover under the doctrine, it must be shown that the defendants were benefited, that the benefit was unjust in that it was not paid for by the defendants, and that the failure of payment operated to the detriment of the plaintiff." (Citation omitted; internal quotation marks omitted.) *Burns* v. *Koellmer*, 11 Conn. App. 375, 383, 527 A.2d 1210 (1987).

"[T]he determinations of whether . . . particular [facts constitute the elements of unjust enrichment] are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Stratford* v. *Castater*, supra, 136 Conn. App. 533.

On appeal, the town contends that the mere fact that it paid the defendant the "cash-out" authorized by Miron is evidence enough that the payment was to its detriment. The town claims that it could have used the "overpaid funds toward other significant services or it could have reduced the tax burden of the taxpayers . . . ." Despite this claim, the town has failed to point to any evidence in the record that the $4802 it claims the defendant owes it would have meaningfully reduced the burden of its taxpayers or that, without that de minimus sum, it was not able to provide needed services to its citizens. Even assuming for the sake of argument that there was sufficient evidence that the defendant's "cash-out" was a detriment to the town, the town's claim on appeal founders because the town failed to prove that the defendant was unjustly benefited. See *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994) (plaintiff must prove defendant was benefited, defendant unjustly did not pay plaintiff for benefits, and failure of payment was to plaintiff's detriment).

In this case, the court found that the defendant paid taxes on the "cash-out" the town paid him, as authorized by Miron. In reaching its conclusion that the defendant had not been unjustly enriched, the court relied on and quoted from the trial court's memorandum of decision in *Stratford* v. *Castater*, Superior Court, judicial district of New Haven, Docket No. CV-10-6011629-S (March 15, 2011), aff'd, 136 Conn. App. 522, 46 A.3d 945, cert. denied, 307 Conn. 903, 53 A.3d 218 (2012). In *Castater*, the trial court, *Lager, J.*, found that the town failed to prove that Eric Castater was not entitled to the "cash-out" or that the payment was detrimental to it. Moreover, because Castater had paid taxes on the "cash-out," it found that "it would be inequitable to apply the doctrine of unjust enrichment against [Castater] to order restitution in the town's favor." Id. Except for certain immaterial details such as the amount of the "cash-out," *Castater* is essentially on all fours with this case.[9]

In resolving the town's appeal in *Castater*, this court stated "[a]s to the [town's] claim that payment of the disputed benefits was adequate proof of detriment itself, [Judge Lager] concluded that the [town] did not

suffer any detriment by making the disputed payments and that, because [Castater] paid taxes on the benefits received"; *Stratford* v. *Castater*, supra, 136 Conn. App. 534; it would be inequitable to require Castater to make restitution to the town. Id. In the present case, we also conclude that, because the defendant paid taxes on the "cash-out" pursuant to the W-2 form provided to him by the town, and in light of the other facts considered by the court, the court properly determined that it would be inequitable to require him to make restitution. The town's claim therefore fails.

## III

The town's final claim is that the court improperly awarded the defendant attorney's fees for bad faith litigation without finding that the litigation was frivolous or that the town did not have a colorable claim. We agree that the court did not use the standard nomenclature when it found that the defendant was entitled to attorney's fees. "In such circumstances [where] the facts are not in dispute . . . the precise legal analysis undertaken by the court is not essential to the reviewing court's consideration of the issue on appeal." (Internal quotation marks omitted.) *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 599 n.7, 840 A.2d 1158 (2004). In the present case, however, the pleadings, uncontroverted evidence, and the legal precedent set by *Stratford* v. *Castater*, supra, 136 Conn. App. 522, which the court in essence adopted, make the factual conclusion that the town engaged in bad faith litigation "so obvious as to be inherent in the trial court's decision." (Internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 405 n.10, 973 A.2d 1229 (2009). We therefore conclude that the trial court properly awarded the defendant attorney's fees.[10]

The following additional procedural history is relevant to our resolution of the town's claim. On May 3, 2012, subsequent to the judgment rendered by Judge Lager in *Castater*, the defendant filed a setoff and counterclaim in which he alleged, in part, that he was employed by the town as an assistant to Miron under a written, at-will employment agreement that incorporated benefits policies. Moreover, in January, 2010, the town sent the defendant his W-2 form, which included the "cash-out" as wages for tax purposes. The counterclaim also alleged that on or about January 26, 2010, the Harkins administration issued a press release announcing that the defendant was indebted to the town and pledging that the town would file an action to collect an amount it felt the Miron administration had overpaid if the defendant did not voluntarily disgorge the payment. The town admitted those allegations.

The counterclaim further alleged that the defendant retained counsel and offered to mediate any bona fide dispute. The defendant also alleged that he filed his state and federal tax returns. The defendant alleged

that the town sought to deprive him of property without due process and equal protection of the law.

The counterclaim also alleged that the action against the defendant, as well as similar actions filed against two other former town employees, was commenced without probable cause. Specifically, the defendant alleged that the "trial of a companion case, [*Castater*] resulted in judgment for [Castater] on all counts based primarily on stipulated facts," and that the institution and prosecution of this action was undertaken for the purpose of conducting a political vendetta and with the intended effect of imposing an unacceptable cost of defense. Moreover, the defendant alleged that he was unable to obtain suitable employment for two years in substantial part, he believed, as the intended result of the false and derogatory impression created by the Harkins administration as to the propriety of his acts following the termination of his employment with the town. The defendant claimed damages and costs, including reasonable attorney's fees, for bad faith litigation and/or pursuant to General Statutes § 31-72.

In its memorandum of decision, the court found that (1) counsel for the defendant attempted to resolve the dispute, but the town was unwilling to compromise, (2) the matter could have been brought in small claims court rather than on the regular civil docket, which increased litigation costs, and (3) "the defamatory manner in which the town brought the charges, i.e., publically announcing that the defendant had misappropriated money before contacting [him], prevented him from finding new employment for two years."[11] Pursuant to those findings, the court concluded that the imposition of attorney's fees against the town was justified and awarded the defendant $3835.

We see the merit in the town's contention that the court's three findings are not the literal findings necessary to support a claim of bad faith litigation. The court did not explicitly state that the action was frivolous or that the town did not have a colorable claim.[12] Taken as a whole, however, the court's memorandum of decision with respect to the town's complaint and the defendant's counterclaim supports the court's ultimate conclusion that the defendant was entitled to attorney's fees, that is, the court's findings and analysis "make the factual conclusion so obvious as to be inherent in the trial court's decision." (Internal quotation marks omitted.) *State* v. *Wilson*, 111 Conn. App. 614, 622, 960 A.2d 1056 (2008), cert. denied, 290 Conn.917, 966 A.2d 234 (2009). That factual conclusion is that the town acted in bad faith by seeking to recoup the "cash-out" it paid to this defendant .

Our decision is significantly influenced by this court's decision in *Castater*.[13] In light of *Castater* and the court's reliance on Judge Lager's decision in deciding the allegations in the town's complaint, we conclude

as a matter of law that no reasonable attorney could believe that facts supporting the cause of action against this defendant could be established. See *Hirschfeld* v. *Machinist*, 131 Conn. App. 364, 369, 27 A.3d 395, cert. denied, 302 Conn. 947, 30 A.3d 1 (2011).

Appellate courts review a trial court's decision to award attorney's fees by the abuse of discretion standard. See *Broadnax* v. *New Haven*, 270 Conn. 133, 178, 851 A.2d 1113 (2004).

"The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights. . . . This court also has recognized a bad faith exception to the American rule, which permits a court to award attorney's fees to the prevailing party on the basis of bad faith conduct of the other party or the other party's attorney." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007).

"[S]ubject to certain limitations, a trial court in this state has the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, *bad faith and harassing litigation conduct*, even in the absence of a specific rule or order of the court that is claimed to have been violated. . . . To ensure . . . that fear of an award of attorney's fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . and a high degree of specificity in the factual findings of [the] lower courts. . . . Whether a claim is colorable, for purposes of the bad-faith exception, is a matter of whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established. . . .

"To determine whether the bad faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its willful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation. . . . As applied to a party, rather than to his attorney, a claim is colorable, for purposes of the bad faith exception to the American rule, if a reasonable person, given his or her first hand

knowledge of the underlying matter, could have concluded that the facts supporting the claim might have been established." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, supra, 131 Conn. App. 369–70. The court did not make those specific findings.

"[E]ven though the function of an appellate court is to review findings of fact, not make factual findings, an appellate court can draw [c]onclusions of fact . . . where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision. . . . *State* v. *Wilson*, [supra, 111 Conn. App. 621–22] . . . (conclusions of fact may be drawn on appeal where subordinate facts found by trial court make such conclusion inevitable as matter of law or where undisputed facts or uncontroverted evidence and testimony in record make factual conclusion so obvious as to be inherent in trial court's decision). In such circumstances [where] the facts are not in dispute . . . the precise legal analysis undertaken by the trial court is not essential to the reviewing court's consideration of the issue on appeal. . . . *Wentland* v. *American Equity Ins. Co.*, [supra, 267 Conn. 599 n.7]." (Internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, supra, 292 Conn. 405 n.10.

We have reviewed the record, including the pleadings and exhibits, and have taken judicial notice of *Castater* and *Winterbottom*, in which the town sought to recoup the alleged overpayment of benefits to employees whose employment was terminated by Miron. See footnote 1 of this opinion. Our decision turns on whether the town exhibited bad faith by pursuing the litigation against the defendant after the appeals in *Castater* were exhausted and whether a reasonable attorney and a reasonable person with knowledge of the underlying facts might have concluded that the facts supporting the claim could not be established. See *Hirschfeld* v. *Machinist*, supra, 131 Conn. App. 369.

The complaints filed in *Castater*, *Wilson*, and *Winterbottom* are essentially identical.[14] *Castater* was tried and the town's appeals concluded months *before* this case went to trial. The town has acknowledged in its appellate brief that it presented no evidence in this case that it did not present in *Castater*. In fact, the parties agreed to put the transcript of Miron's testimony in that case into evidence in lieu of his live testimony. Although Judge Lager dismissed the town's conversion claim against Castater for failure to make out a prima facie case; *Stratford* v. *Castater*, supra, 136 Conn. App. 528; the town did not withdraw that claim against the defendant until it filed its appellate brief. Not only did the town rely on the same claims, but it also did not present any new evidence. Given the court's reliance on *Castater*, we are led to the inevitable conclusion that a

reasonable attorney and a reasonable person having firsthand knowledge of the underlying facts could not have concluded that they could establish facts to support the claims against the defendant. The fact that the town and its counsel knew that there were no facts to support the town's claims is borne out by the fact that they did not present evidence materially different from that in *Castater*. Although, as noted, the court did not make a specific finding that the town acted in bad faith, its finding that the town failed to negotiate a settlement[15] and its causing a defamatory newspaper article to be published before it informed the defendant of its claims make the factual conclusion of bad faith litigation inherent in the court's decision.[16]

The town does not dispute that it paid the defendant's "cash-out" as directed by Miron. The town has presented no evidence that the defendant did not provide the services for which he was hired and paid. The case put on by the town at trial and argued on appeal points to the disagreement the Harkins administration had with Miron as to the composition and the amount of the defendant's "cash-out." See footnote 8 of this opinion. The town's fight is with Miron, not the defendant. After paying the defendant and sending him a W-2 form, the town's "change of mind and heart has come too late." *Monroe National Bank* v. *Catlin*, supra, 82 Conn. 230.

The courts of this state have long held that "money paid with full knowledge of the facts, but through ignorance of the law, is not recoverable, if there be nothing unconscientious in the retainer of it . . . ." (Emphasis omitted.) *Northrop* v. *Graves*, 19 Conn. 548, 558 (1849). In other words, an employer has no cause of action against an employee whom it has paid to recoup the funds, if the payment was made with full knowledge of the facts and the employee retains the payment in good conscience. In this case, the town, acting through Miron, authorized the defendant's final paycheck and "cash-out." The town did not allege fraud, misrepresentation or concealment on the part of the defendant as to the "cash-out." See *Monroe National Bank v. Catlin*, supra, 82 Conn. 230. "Any failure on [a] plaintiff's part to understand the full extent of the parties' strict legal rights under the known facts, cannot help to reopen the once closed door of controversy . . . ." Id. "Notwithstanding that [a] plaintiff may have been ignorant of its strict legal rights when it paid over the money, the defendant is not thereby placed in the position of now holding that which he cannot in good conscience retain." Id. We conclude that the town pursued noncolorable claims against the defendant after the appeals in *Castater* were resolved, and the court, therefore, properly awarded the defendant attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] See *Stratford* v. *Winterbottom*, 150 Conn. App.   ,   A.3d   (2014); *Stratford* v. *Castater*, 136 Conn. App. 522, 46 A.3d 945, cert. denied, 307 Conn. 903, 53 A.3d 218 (2012). This case and *Winterbottom* were tried together, and the subsequent appeals to this court were argued on the same day.

[2] The court found in favor of the defendant on the conversion count. In its appellate brief, the town stated that it was withdrawing that cause of action.

[3] The first three special defenses pleaded by the defendant were (1) satisfaction and accord, (2) equitable estoppel and/or laches, and (3) unclean hands.

[4] The special defense alleged that the town made identical allegations and claims in an action against another former employee, Eric Castater. Moreover, in that action, "[*Stratford* v. *Castater*, Superior Court, judicial district of New Haven, Docket No. CV-10-6011629-S (March 15, 2011), aff'd, 136 Conn. App. 522, 46 A.3d 945 (July 3, 2012), cert. denied, 307 Conn. 903, 53 A.3d 218 (September 18, 2012)], the court held that the authorized intentional payment of the amount directed by Mayor Miron proved there was no overpayment."

[5] Miron lost his bid for reelection in November, 2009.

[6] On appeal, the defendant does not challenge the court's ruling with respect to his collateral estoppel special defense.

[7] More specifically, the town claims that Miron improperly paid the defendant $576.95 for perfect attendance, $3846.17 for ten professional development days, and $480.77 for vacation days, for a total of $4803.86.

[8] The defendant placed two newspaper articles into evidence. On Tuesday, January 12, 2010, the Connecticut Post published the following. "Two pieces of information came to light just before Monday's Town Council meeting intended to protect the safety and the purse strings of town taxpayers.

"In the minutes before the meeting . . . Harkins presented council members with a two-page document outlining his package of employee benefit reforms, seeking to close loopholes that allowed some employees of the previous administration to leave town service with 'highly excessive compensation for unused leave time and severance payments.'

"In a prepared statement, Harkins said the taxpayers 'were blindsided by the revelation that town employment practices were being abused to allow some employees to leave their jobs with tens of thousands of dollars in severance payments and other compensation above and beyond their salaries.' . . .

"Council members did not have time to read through Harkins' employee benefit reforms document, but Councilwoman and Minority Leader Stephanie Philips said, 'We are encouraged that Mayor Harkins is addressing this issue.' That issue involved previous mayor . . . Miron, who signed off on excessive and potentially improper payouts to himself, three top administrators and two staff assistants totaling $224,000 just before leaving office. Miron terminated the officials, which allowed them to receive 60 days of additional pay, plus their full 2010 vacation and sick pay, money they would not have received if they resigned.

"[Harkins'] document highlights five changes in employee benefits. First on his list says, 'The "Professional Development Day" boondoggle is ended.' Rather, it will be treated as a normal day of work, he said. Other changes are as follows: cash-out benefits for accrued leave are prorated for partial years worked, leave accrual is capped and cash outs limited, employees who are terminated are no longer entitled to cash-out accrued leave and sixty-day notice provisions are ended.

"'We cannot continue to tolerate benefits packages for mayoral appointees that are generous to the point of being foolish, particularly when unionized employees have been asked for concessions and givebacks in these tough times,' Harkins said.

"He added that his administration will engage in a process to determine if any of the money can be recouped from Miron and his Chief Administrative Officer . . . Human Resources Director Edmund Winterbottom, Finance Director . . . and the mayor's administrative aides [Wilson and Castater]." M. Barone, "Stratford tightens town purse strings," Connecticut Post, January 12, 2010.

On January 27, 2010, the Stratford Star published an article entitled "Town threatens legal action on Miron 'cash-outs'." The article stated that the town's attorney, Tim Bishop, had identified the defendant and four other former

town employees to whom the town had made "overpayments" during the closing days of the Miron administration. Bishop sought the voluntary return of the "overpayments." The article further stated: " 'Should one or more of the parties in question decline, the town will take legal action to recoup these funds through a collections attorney acting on a contingency basis, ensuring no additional resources are spent on attorney or court fees in this matter,' according to the press release from Harkins.

"But Miron strongly disagreed and said the town might find itself having to defend the former employees.

" 'As an attorney, there are no legal grounds,' Miron said. 'I'm curious to know what legal theory the town is going to claim, given the contracts were done properly and in concurrence with the law.'

"[The former finance director] had announced his resignation days after Harkins was elected. The other four did not show up for work, unannounced, Dec. 15, the day after Harkins was inaugurated. Records show them as having been 'terminated' by . . . Miron.

"Those five employees, plus Miron, collected some $224,000 for unused vacation, sick and professional development time." J. Kovach, "Town threatens legal action on Miron 'cash-outs,' " Stratford Star, January 27, 2010.

[9] With respect to the defendant's collateral estoppel special defense, the court concluded that the doctrine did not apply to the present case. In adjudicating the town's complaint, however, the court quoted heavily from Judge Lager's opinion in *Castater* and resolved the legal and factual issues on the same basis. Without saying so, the court in effect did apply the doctrine of collateral estoppel.

[10] It is well settled that an appellate court may "sustain a right decision although it may have been placed on a wrong ground." (Internal quotation marks omitted.) *Fennelly* v. *Norton*, 103 Conn. App. 125, 142, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

[11] The court's finding that the town brought charges against the defendant in a defamatory manner is supported by the newspaper article that quotes the Harkins administration accusing the defendant of not reporting for work unannounced subsequent to the termination of his employment. See footnote 8 of this opinion.

[12] The defendant did not file a motion for articulation. See Practice Book § 66-5.

[13] An appellate court may take judicial notice of the trial court files in other cases. *Stuart* v. *Freiberg*, 142 Conn. App. 684, 687 n.3, 69 A.3d 320, cert. granted on other grounds, 310 Conn. 921, 77 A.3d 142 (2013).

[14] The interpretation of pleadings is always a question of law for the court. See *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985).

[15] Despite the similarity of legal issues and facts, following its loss in our appellate courts, the town made no effort to negotiate a settlement of the present action, which required the defendant to mount a defense and to prepare a brief on appeal.

[16] We note that Judge Lager did not award Castater attorney's fees, concluding that the town's claims in that action were colorable and that it did not act in bad faith. Once the town's appeals in *Castater* were exhausted, however, the town cannot in good faith claim that the same causes of action, with similar facts, against the defendant were colorable.

———————————————————