******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KEVIN SHEVLIN ET AL. *v.* CIVIL SERVICE
COMMISSION OF THE CITY OF
BRIDGEPORT ET AL.
(AC 34987)

Lavine, Robinson and Sheldon, Js.*

*Argued November 12, 2013—officially released February 25, 2014*

(Appeal from Superior Court, judicial district of

Fairfield, Bellis, J. [motion to cite]; Radcliffe, J. [judgment].)

*Henry F. Murray*, for the appellants (defendant Scott Borris et al.).

*Thomas W. Bucci*, for the appellees (plaintiffs).

*Opinion*

LAVINE, J. This administrative appeal requires us to construe the Bridgeport City Charter (charter) and the rules (rules) of the Bridgeport Civil Service Commission (commission) to identify the date on which eligibility (eligibility date) to take fire captain promotion examination number 2319 (examination 2319) should have been determined. To determine the eligibility date, we must first decide whether the trial court properly found that a certain firefighter was not laid off when he was demoted from the captain to the lieutenant class. We conclude that the court properly found that the firefighter was not laid off and, therefore, we affirm the judgment of the trial court.

The defendants[1] appeal, following a trial to the court, which rendered judgment in favor of the plaintiffs.[2] On appeal, the defendants claim that the court improperly determined the eligibility date for examination 2319 by misconstruing and misapplying the terms of the charter. We disagree.

The plaintiffs commenced this action on March 30, 2012, seeking a judicial determination of the eligibility date for examination 2319. They alleged, in part, that they were long-standing members of the Bridgeport Fire Department (department) and that they were lieutenants qualified for promotion to the rank of captain as of August 1, 2011. They further alleged that the commission improperly set August 21, 2011, as the eligibility date. More specifically, the plaintiffs alleged that the city, through its personnel director, David J. Dunn, failed to conduct examination 2319 within 120 days of a vacancy in the captain classification and extended the eligibility date beyond 120 days of the vacancy. As a consequence, Dunn permitted sixteen lieutenants to take examination 2319, although they did not satisfy the three year time-in-grade requirement as of 120 days from the vacancy in the captain classification.[3] The plaintiffs sought a temporary injunction barring the commission and Dunn from conducting a captain examination pending the court's determination of the merits of their complaint.

Subsequent to the commencement of the action, the court, *Bellis*, *J.*, granted a motion to add indispensable parties. See footnote 1 of this opinion. Thereafter, the parties stipulated to certain facts and tried the case to the court, *Radcliffe*, *J.*, and submitted posttrial briefs. On July 16, 2012, Judge Radcliffe issued a memorandum of decision, rendering judgment in favor of the plaintiffs. The court ordered the commission and Dunn to utilize August 1, 2011, as the eligibility date and that only those candidates who were qualified to sit for the captain examination as of August 1, 2011, were eligible for promotion to the rank of captain on the basis of the results of the examination conducted prior to trial.

The court found that, when a vacancy occurred in the captain class in April, 2011, and there was no promotion list, Dunn determined that a captain examination was necessary, and he set August 21, 2011, as the eligibility date. The plaintiffs disagreed with the eligibility date that Dunn had set and appealed to the commission. At a February 28, 2012 special meeting, the commission heard arguments from Dunn, the city attorney, and the attorney representing the plaintiffs. The commission debated the provisions of the charter and rules and voted unanimously to set August 1, 2011, as the eligibility date. The court found that, in doing so, the commission disregarded Dunn's recommendation that April 23, 2011, was the date from which the eligibility date should be calculated.

The court also found that, at the commission's regularly scheduled meeting held on March 13, 2012, Commissioner Willie C. McBride, Jr., moved to reconsider the commission's February 28, 2011 decision as to the eligibility date. The commission retired to executive session. When it returned to the public meeting, the commission voted to reconsider its prior decision, and voted to set August 21, 2011, as the eligibility date for examination 2319.

The court found that, although the controversy alleged in the complaint centered on the action taken by the commission on March 13, 2012, the dispute stemmed from an incident that had occurred on March 1, 2007, when Lieutenant John Macnicholl was involved in an altercation with his superior. Macnicholl was charged with violating department policies and was dismissed from employment on July 3, 2007. Prior to being dismissed, however, Macnicholl took a captain examination.[4] On the basis of his performance on that examination, Macnicholl ranked third on the resulting promotion list.

The court also found that Macnicholl appealed the termination of his employment to the State Board of Mediation and Arbitration (board). The board unanimously rejected the city's claim that Macnicholl's dismissal was for just cause and ordered the city to make him whole. The board's February 11, 2009 decision noted that Macnicholl ranked third on the promotion list for captain at the time of his employment termination. When Macnicholl was reinstated, promotion list 2214 was in effect and was due to expire on January 20, 2010.[5]

In addition, the court found that Chief Brian Rooney conducted a performance review of Macnicholl after he was reinstated as a lieutenant. Despite the board's unanimous finding that Mcnicholl had no prior disciplinary history and that his personnel file contained commendations, Rooney rated Macnicholl's performance as unsatisfactory and found that he was not fit to serve as a captain in the department. On May 26,

2009, five days after Rooney completed his evaluation of Macnicholl, Captain Robert McLeod was promoted to the rank of provisional assistant chief, thereby creating a vacancy in the captain class. On June 9, 2009, pursuant to Rooney's evaluation of Macnicholl, city personnel director, Ralph Jacobs, declined to promote Macnicholl to the captain class. Macnicholl appealed Jacobs' decision to the commission on July 13, 2009. On September 1, 2009, while Machnicoll's appeal to the commission was pending, Lieutenant Paul Cocca, who ranked twenty-fifth on promotion list 2214, was promoted to the captain class. The commission sustained Macnicholl's appeal on March 18, 2010, and, thereafter, Macnicholl was appointed to the captain class. The court found that the department budget and structure, however, allowed for only eighteen positions in the captain class. Because there were no vacancies in the captain class at the time, Cocca was demoted from captain to lieutenant.

On March 19, 2010, Rooney wrote to Dunn, stating: "I am requesting you to send . . . Cocca a letter informing him of his recall rights to the position of Captain within the next two . . . years when a vacancy exists." In a March 22, 2010 letter to Cocca, Dunn wrote "Layoff" in the reference line and referred to section 210 of the charter and Rule XIII of the rules. Dunn's letter to Cocca further stated in part that "[y]ou will retain recall rights until the next available Captain's position until March 21, 2012."[6] Soon thereafter, on April 2, 2011, Captain Luis Rivera retired from the department, and on April 9, 2011, Cocca again was promoted to the captain class. The court found that at the time Cocca was reappointed to the captain class, promotion list 2214 had expired on January 20, 2010.

The court found that on April 23, 2011, Captain Richard Thode was promoted to the assistant chief class, which created a vacancy in the captain class. Because promotion list 2214 had expired, Dunn prepared to conduct a captain examination and determined that an individual had to have been a lieutenant in the department for at least three years as of *August 21, 2011*, to be eligible to take examination 2319.[7] Dunn calculated the eligibility date pursuant to the "*Walker* Rule,"[8] by adding 120 days to the date Thode was promoted to assistant chief, i.e., April 23, 2011, as the date on which the vacancy occurred.

In addition, the court found that the plaintiffs challenged Dunn's determination of the eligibility date by way of an appeal to the commission. The commission heard the appeal at a special meeting held on February 28, 2012, where the plaintiffs claimed that Cocca's demotion to the lieutenant class in March, 2010, was not a layoff under the charter and rules and that Cocca should not have been placed on a reemployment list. The plaintiffs maintained that 120 days from April 2,

2011, the date Rivera retired, was the date to use to determine the eligibility date and asked the commission to set August 1, 2011, as the eligibility date. The court found that the commission unanimously agreed with the plaintiffs that the correct eligibility date was August 1, 2011. Two weeks later, however, at its regular March 13, 2012 meeting, Commissioner McBride asked the commission to reconsider its February 28, 2010 decision regarding the eligibility date. After the commission met in executive session, it returned to the public meeting, agreed to reconsider its prior decision, and adopted the date of August 21, 2011, as the eligibility date. The plaintiffs thereafter filed the present action.

In adjudicating count one of the complaint, which alleged that the commission improperly established August 21, 2011, as the eligibility date, the court relied on several sections of the charter and rules that were placed into evidence. In framing the issue, the court found that the plaintiffs had not alleged that Cocca had failed to perform his duties as a captain in a satisfactory fashion between September 1, 2009, and March 21, 2010. The question, therefore, was whether Dunn properly had placed Cocca's name on a reemployment list in March, 2010. The court concluded that the answer turned on whether Cocca had been laid off pursuant to § 210 (a) of the charter.[9] See Bridgeport Charter, c. 17, § 210 (a).

The court found that at the time Cocca was demoted in March, 2010, the position of captain to which he had been appointed in September, 2009, had not been discontinued due to lack of work or lack of funds. The number of positions in the captain class had not changed. Moreover, the court found that the rules do not include demotion in the definition of layoff. It also found that the right to be placed on a reemployment list pursuant to Rule XIII (2) applies only in cases of layoff, reemployment, transfer or vacation. The court further found that the term transfer did not apply to Cocca's demotion as he was at all times relevant a member of the department. The court also found that Cocca was demoted due to Macnicholl's successful appeal from Jacob's decision not to appoint him to the captain class. The court therefore concluded that Cocca's demotion was not a layoff and that his name should not have been placed on a reemployment list. The court also found that promotion list 2214 expired in January, 2010, that a vacancy occurred in the captain class when Rivera retired, and that the commission properly concluded on February 28, 2012, that the eligibility date for examination 2319 was August 1, 2011.[10]

In conclusion, the court stated that the eligibility date for the captain promotion examination 2319 is August 1, 2011, and that an applicant must possess the qualifications to sit for the examination on that date. The court ordered the commission and Dunn to use August 1,

2011, as the eligibility date and that only those candidates who possessed the qualifications to sit for examination 2319 as of August 1, 2011, were eligible for promotion to the captain class on the basis of the results of an examination conducted prior to trial. The court rendered judgment in favor of the plaintiffs and the defendants appealed.

On appeal, the defendants claim that the court's factual findings are clearly erroneous and that its interpretation of the charter and the rules is improper. The parties submitted stipulations of fact to the court, and there is no disagreement as to the reasons for, times of, and names of persons involved. We must determine then whether the court properly determined, pursuant to the charter and rules, that Cocca was not laid off in March, 2010, when he was demoted from captain to lieutenant. We conclude, as a matter of law, that Cocca was not laid off and, therefore, that his name was improperly placed on a reemployment list. As a consequence, Dunn improperly calculated the eligibility date as August 21, 2011.

The applicable standard of review is well known. "[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"As with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary. . . . We turn, therefore, to our usual tools of statutory construction. In determining whether the city's methodology violates the statutory scheme of the charter, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . ." (Citations omitted; internal quotation marks omitted.) *Kelly* v. *New Haven*, 275 Conn. 580, 607-608, 881 A.2d 978 (2005). "In construing the civil service provisions of the charter, we are always mindful of the importance of maintaining the integrity of [the city's civil service] system." (Internal quotation marks omitted.) Id., 608.

"The civil service law provides for promotion in governmental employment according to merit and fitness ascertained by competitive examination. . . . The primary purpose of these laws is to guarantee that the meritorious secure jobs and to free public employees from the fear of personal and political reprisal. . . . These examinations not only protect the employees but also benefit the general public in that they tend to eradicate corruption as well as ensure that the persons

with the necessary qualifications to discharge intelligently their duties pertaining to public office will do so. . . .

"It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effective civil service system is built. Any violation of the law enacted for preserving this system, therefore, is fatal because it weakens the system of competitive selection which is the basis of civil service legislation. . . . Strict compliance is necessarily required to uphold the sanctity of the merit system . . . good faith of the parties will not validate illegal appointments, nor will continued employment in an invalidly obtained position. . . . To excuse good faith violations of our civil service law would open the door to abuses which the law was designed to suppress." (Citations omitted; internal quotation marks omitted.) *Cassella* v. *Civil Service Commission*, 202 Conn. 28, 34–35, 519 A.2d 67 (1987).

On the basis of our construction of the relevant provisions of the rules and the charter, we conclude that a layoff occurs if a firefighter is separated from employment when a *position* is discontinued due to either lack of work or lack of funds. Rule I provides in relevant part: "The several terms hereinafter mentioned shall be construed as follows: 'position' shall mean any office or employment either occupied or vacant, calling for the performance of certain duties and the exercise of certain responsibility by one individual either on a full-time or part-time basis; 'class' shall mean a group of positions established under these rules sufficiently similar in respect to their duties and responsibilities . . . 'transfer' shall mean the change of any employee with permanent status from a position in one department to a position in the same class in another department; 'promotion' shall mean a change of an employee with permanent status from a position in one class to a position in another class having a more remunerative salary range; 'demotion' shall mean a change of an employee with permanent status from a position in one class to a position in another class having a less remunerative salary range; 'termination' shall mean the separation from a position in the classified service of an employee who has been employed under either a provisional appointment, a temporary appointment or an emergency appointment; *'lay-off' shall mean the separation from the service of an employee having probationary or permanent status where the position has been discontinued because of either lack of work or lack of funds*." (Emphasis added.) Bridgeport Rules of the Civil Service Commission, Rule I.

Section 210 (a) of the charter provides in relevant part: "When any employee in the classified service, who has been performing his duties in a satisfactory manner as shown by the records of the department . . . in

which he has been employed, shall be *laid off because of lack of work or lack of funds*, or has been on authorized leave of absence and is ready to report for duty when a position is open . . . the personnel director shall, on order of the commission, cause the name of such employee to be placed on the re-employment list for the appropriate class, for re-employment within two years thereafter when vacancies in such class shall occur. . . ."[11] (Emphasis added.)

On appeal, the defendants claim that the calculation of the eligibility date for examination 2319 should begin on April 23, 2011, the date that Thode was promoted, not April 2, 2011, the date that Rivera retired. They argue that under the charter, the city is not required to schedule a competitive test when a vacancy in a position occurs if there is either an active employment list for the class that is based on a promotion examination or there are individuals on an active reemployment list for that class. See Bridgeport Charter, c. 17, § 211 (b).[12] An employment list for a class lasts for two years from the date the first promotion is made from the list. See Bridgeport Charter, c. 17, § 211 (a). An employee's right to be recalled to the position previously held by the employee lasts for two years from the date the person was placed on the list. Bridgeport Charter, c. 17, § 210. In this case, the promotion list 2214 for captain expired on January 20, 2010.

The defendants contend, however, that Cocca was placed on the reemployment list for the captain class following his *layoff* from the rank of captain on March 21, 2010. Dunn informed Cocca, at that time, that he had recall rights to the captain class until March 21, 2012, or the next available position within the class. The defendants contend that the next available position in the captain class occurred when Rivera retired and Cocca was promoted from the reemployment list on April 9, 2011. From the defendants' perspective, because Cocca was not promoted from the promotion list, there was no vacancy on the promotion list until Thode was promoted. The fallacy in the defendants' position is that Cocca was not laid off, and he was not properly placed on the reemployment list. Although the defendants argue that there was no work for Cocca in the captain class when Macnicholl was promoted to that class, the department command and leadership structure provided for only eighteen positions in the captain class. The defendants' position is contrary to the definitions set forth in Rule I of the rules and § 210 (a) of the charter. In their brief on appeal no less, the defendants acknowledge that Cocca's *transfer* from the captain class back to the lieutenant class was a *demotion* within the meaning of the rules.

Section 210 (a) of the charter provides in relevant part: "When any employee in the classified service, who has been performing his duties in a satisfactory manner

. . . shall be *laid off* because of lack of work or lack of funds . . . the personnel director shall, on order of the commission, cause the name of such employee to be placed on the re-employment list for the appropriate class, for re-employment within two years . . . ."[13] The record discloses that when Macnicholl was promoted to the captain class, the department structure and budget allowed for eighteen captain positions. There were no vacancies in the captain class. As the defendants themselves point out, Cocca was *demoted* to the lieutenant class in March, 2010.

The factual circumstances here do not constitute a layoff. The rules define layoff as "the separation from the service of an employee . . . where the position has been discontinued because of either lack of work or lack of funds." The evidence supports the trial court's findings that Cocca's demotion was due to Macnicholl's promotion, the position was not eliminated, and Cocca was not separated from service in the department. There was no vacancy in the captain class because the *position* was not eliminated due to lack of work or lack of funds. There were eighteen positions in the captain class when Cocca was promoted in September, 2009, and eighteen positions at that level when he was demoted in March, 2010. Because Cocca was not laid off, his name should not have been put on the reemployment list.

Promotion list 2214 expired in January 20, 2012; Rivera's retirement thus created a vacancy at the captain class and there was no active promotion list. The date of Rivera's retirement, therefore, is the date from which Dunn should have calculated the eligibility date. We therefore conclude that the vacancy on promotion list 2214 occurred when Rivera retired on April 2, 2011, and that the court properly determined that the eligibility date for examination 2319 is August 1, 2011. We, therefore, affirm the judgment of the trial court in all respects.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendants on appeal are Scott Boris, Andrew Ellis, Peter Morotto, Robert Novak, David Purcell, and Ronald Rolfe, who are fire lieutenants employed by the City of Bridgeport (city).

The action was commenced against two defendants, the Civil Service Commission of the City of Bridgeport and David J. Dunn, acting personnel director for the city. On April 15, 2012, eleven lieutenants in the Bridgeport Fire Department moved to intervene in the action, claiming that they were indispensable parties. Those lieutenants are: Lee Williamson, Scott Boris, Timothy Bottone, Mark Cody, Matthew Deysenroth, Lawrence Donnelly, Andrew Ellis, Andrew Fierlit, Peter Morotto, and Robert Novak. Darren Penix, David Purcell, Michael Raffolo, Ronald Rolfe, Giovanni Sanzo, and Paul Cocca also were made defendants, as their eligibility to take the captain's examination was date dependent, as well.

Bridgeport Fire Fighters Local 834 of the International Association of Fire Fighters filed a motion to intervene on June 4, 2012; the motion was granted.

[2] The plaintiffs are twenty-one members of the Bridgeport Fire Department who had attained the rank of lieutenant and were qualified to take the

captain's examination on August 1, 2011. They are Kevin Shevlin, David Simon, Shane L. Porter, Peter Mosley, Francis Falanga, Kenneth Domshine, Everal Wallen, Kevin Higgins, Albert Diaz, Michael J. Filakovsky, Armando Cora, John McMahon, Carlos Reyes, Lee Taylor, James Elward, Ron LaFlamme, Ray Lopez, Glen Christie, Mike Meehan, Alsee McCray, and Dave Acanfora.

[3] In their brief on appeal, the defendant members of the department represent that they established "time-in-grade eligibility as of August 10, 2011," and that forty-seven lieutenants participated in examination 2319. They also represented that they ranked first, second, sixth, eighth, eleventh, and sixteenth on examination 2319.

[4] The captain examination that Macnicholl took is not the examination at issue in this appeal.

[5] Pursuant to § 211 (a) of the charter, the life of a promotion list is two years.

[6] In the first paragraph of his letter to Cocca, Dunn stated: "Please be advised that effective Sunday, March 21, 2010 at 8:00 a.m. you were laid off as Captain and reinstated as a Fire Lieutenant with the Bridgeport Fire Department. Your layoff is pursuant to Section 210 of the City Charter and Rule XIII of the Civil Service Rules and Regulations. You will retain recall rights until the next available Captain's position until March 21, 2012."

[7] The three year eligibility requirement was not an issue at trial nor is it on appeal.

[8] See *Walker* v. *Jankura*, 162 Conn. 482, 294 A.2d 536 (1972).

[9] Cocca's promotion to captain on April 9, 2011, has never been challenged by anyone, and is not an issue in this appeal.

[10] The court concluded that, because it found that August 1, 2011, is the eligibility date, it was not necessary to consider the plaintiffs' claim that the commission acted unlawfully on March 13, 2012, when it established August 21, 2011, as the eligibility date. The plaintiffs have not raised this issue on appeal.

[11] The authorized leave of absence language is not relevant to this appeal.

[12] Bridgeport Charter, c. 17, § 211 (b) provides: "The personnel director may, from time to time, hold promotion tests for any or all positions in the competitive division of the classified service which are allocated to class which have been or shall be established to be at the promotion level by the civil service commission. When a position in a promotion class shall become vacant, and no appropriate re-employment list or employment list exists, the personnel director shall, within one hundred and twenty days of the date of the creation of the vacancy, hold a promotion test for such class."

[13] There is no evidence in the record that the commission ordered Dunn to place Cocca's name on the reemployment list.

[14] The defendants also claim that the city consistently has applied the charter and rules in a manner identical to its treatment of Cocca whenever employees are laid off. That issue was not addressed by the trial court, and therefore is not properly before this court. See *Willow Springs Condominium Assn.*, *Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 33, 717 A.2d 77 (1998).

---