******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF STRATFORD *v.* EDMUND
WINTERBOTTOM
(AC 35825)

Lavine, Bear and West, Js.*

*Argued March 7—officially released June 17, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Hon. Howard T. Owens, Jr., judge trial
referee.)

*Michael S. Casey*, for the appellant (plaintiff).

*Frank B. Cochran*, with whom was *Edmund E. Win-
terbottom*, self-represented, for the appellee
(defendant).

*Opinion*

LAVINE, J. This is one of three cases in which the plaintiff, the town of Stratford (town), sought to recoup a portion of the "cash-out" benefits paid to former employees that were authorized by the town's then mayor who terminated their employment.[1] The town appeals from the judgment of the trial court rendered in favor of the defendant, Edmund E. Winterbottom, on the town's complaint and the defendant's counterclaim. On appeal, the town claims that the court erred by determining that (1) the town improperly reduced the defendant's salary, (2) the mayor has the unilateral power to modify an employee's monetary benefits, (3) the defendant may keep his "cash-out" in good conscience, and (4) the defendant was entitled to attorney's fees for bad faith litigation.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On May 14, 2010, the town commenced this action, which sounded in three counts: money had and received, unjust enrichment, and conversion.[3] The town alleged that it and the defendant entered into an employment agreement (agreement) under which the town paid the defendant a salary and extended benefits in exchange for his services. On December 11, 2009, the then mayor, James R. Miron,[4] terminated the defendant's employment, and the town paid the defendant accrued benefits consistent with the agreement. The town also alleged that it paid the defendant moneys in excess of that to which he was entitled, specifically $9744.56. Moreover, the town alleged that it was free from any moral or legal obligation to make the overpayment and that the defendant in equity and good conscience had no right to retain the overpayment. On January 27, 2010, the town demanded that the defendant return the overpayment, but he refused.

In response, the defendant filed an answer, special defenses and a counterclaim for breach of contract. He denied the town's allegations that he was overpaid, had no right in good conscience to retain the alleged overpayment, and had been unjustly enriched. He also pleaded three special defenses: accord and satisfaction, equitable estoppel or laches, and unclean hands. On October 19, 2012, the defendant amended his answer to plead a fourth special defense of collateral estoppel predicated on *Stratford* v. *Castater*, Superior Court, judicial district of New Haven, Docket No. CV-10-6011629-S (March 15, 2011), aff'd, 136 Conn. App. 522, 46 A.3d 945, cert. denied, 307 Conn. 903, 53 A.3d 218 (2012), a case in which the town alleged the same three causes of action and materially similar facts against another former town employee, Eric Castater.

Prior to trial, the parties stipulated to the following

facts. The defendant was employed by the town as the director of human resources from May 12, 2008 through December 11, 2009. He was a salaried, full-time employee under a written, at-will, agreement that entitled him to benefits pursuant to policies incorporated in the agreement. The defendant's annual salary under the agreement was $90,884, and he was required to work 37.5 hours per week. The defendant worked directly under Miron, who was mayor from December 11, 2005 through December 12, 2009. Miron negotiated and signed the agreement, and terminated the defendant's employment. After he terminated the defendant's employment, Miron approved the categories and hours used to calculate the accrued benefits owed the defendant. The town paid the defendant benefits, which were referred to as a "cash-out." The "cash-out" was calculated using a nominal hourly rate and was subject to withholding and other deductions.

The parties also stipulated that in the spring of 2009, the defendant made a monetary contribution to Miron's reelection campaign. When the town council (council) approved the town budget for July 1, 2009 through June 30, 2010, it denied Miron's proposed raise for the defendant and directed Miron to reduce the defendant's annual salary from $90,884 to $85,884. As a consequence of the reduction in the defendant's annual salary, the nominal hourly rate used to calculate his "cash-out" was reduced from $46.61 to $44.04. Moreover, a new town administration under Mayor John A. Harkins took office on December 14, 2009. In January, 2010, the town sent the defendant a W-2 form for 2009 that included his "cash-out" income for social security purposes and itemized deductions. On or about February 1, 2010, the defendant received a letter from Kevin Kelley, the assistant town attorney, notifying him that the town claimed a debt of $9744.56.

The court held the first day of trial on December 19, 2012, when it took evidence and heard arguments regarding the defendant's collateral estoppel special defense. The court recessed to consider the special defense, and the parties' stipulated facts. On January 31, 2013, the court issued a memorandum of decision in which it declined to apply the doctrine of collateral estoppel in this case.

The court heard evidence on the town's complaint and the defendant's counterclaim on March 5, 2013, along with the case of *Stratford* v. *Wilson*, Superior Court, judicial district of Fairfield, Docket No. CV-10-6010163-S (June 10 2013). The court issued its memorandum of decision on June 10, 2013. In its decision, the court stated that the issue raised by the town's complaint was whether Miron improperly computed some of the defendant's "cash-out" by including hours for perfect attendance, vacation days, professional development days, and sick days. The court found the

value of the alleged overpayment to be $9744.56 and that the town wanted full reimbursement. The court stated that the claim alleged in the defendant's counterclaim was for wages wrongfully withheld due to the town's having reduced the defendant's salary by $3392.40 that resulted in a $848.10 underpayment of his "cash-out."

The court made the following findings of fact pursuant to the parties' stipulation. The defendant was the town's human resources director from May 12, 2008 through December 11, 2009. Miron hired him pursuant to an at-will agreement that entitled the defendant to certain benefits, including a salary of $90,844 per year and a 37.5 hour work week. In setting the town's budget for July 1, 2009 through July 30, 2010, the council denied the raise for the defendant proposed by Miron and instead reduced his salary from $90,844 per year to $85,884 per year. The reduction in the defendant's salary caused his nominal hourly rate to be reduced from $46.61 to $44.04.

Miron lost his bid for reelection, and Harkins assumed office as the town's mayor on December 14, 2009. Prior to Harkins' taking office, the defendant accepted Miron's offer to terminate his employment. Due to the termination of his employment, the defendant was paid for accrued benefits in a "cash-out" that was included in his last paycheck. Miron personally approved the "termination notice" listing the categories and hours to be used in determining the defendant's "cash-out." The value of the "cash-out" was calculated by using a nominal hourly rate and was subject to withholding and other deductions. The hourly rate used to calculate the defendant's "cash-out" was $44.04.

In January, 2010, under the Harkins administration, the town sent the defendant a W-2 form, which included the "cash-out" income for social security purposes along with appropriately itemized deductions. The assistant town attorney sent the defendant a letter dated January 27, 2010, informing him that the town claimed a debt of $9744.56.

In adjudicating the town's claim for money had and received, the court quoted the analysis of the court, *Lager, J.*, in *Stratford* v. *Castater*, supra, Superior Court, Docket No. CV-10-6011629-S. Pursuant to Judge Lager's decision in *Castater*, the court stated that it "must first determine whether the cash-out payments were made by mistake by determining whether the mayor had the power to alter the cash-out amount under the town charter, and then, decide whether equity warrants the court invalidating this transfer of funds." After construing various sections of the charter and the agreement, the court concluded that Miron did not exceed his authority and that the "cash-out" was not paid by mistake.

The court also considered whether the defendant had an equitable right to retain the "cash-out." It found that, although the defendant, as the human resources director, had participated with Miron in calculating the "cash-outs" of others whose employment Miron had terminated, he did not participate in the calculation of his own "cash-out." The court also found that, after Miron left office, the town provided the defendant with a W-2 form that included the "cash-out" as part of his wages, and that the defendant paid taxes on the "cash-out." The court therefore concluded that the defendant had retained the "cash-out" in good conscience.

When it adjudicated the town's claim for unjust enrichment, the court again looked to Judge Lager's decision in *Castater*, noting that "because [Castater] had paid taxes on [the 'cash-out,'] 'it would be inequitable to apply the doctrine of unjust enrichment against him to order restitution in the town's favor.' " Moreover, the court found that the town had failed to prove that the defendant was unjustly enriched. The court concluded that it would be inequitable to apply the doctrine of unjust enrichment to him.

As to the defendant's counterclaim, the court stated that the defendant was making a claim against the town for lowering his salary in violation of the agreement. The court therefore found that the defendant was entitled to compensation for lost wages and to payment for the difference between the "cash-out" he was paid and the "cash-out" he would have been paid at his "old rate of pay." Moreover, the court concluded that pursuant to General Statutes § 31-72,[5] if an employer fails to pay an employee's wages, the employee is entitled to twice the lost wages plus attorney's fees. The court awarded the defendant damages of $8481, twice the total of the town's underpayments, and $6800 for attorney's fees. The court also found certain facts that it concluded justified the imposition of attorney's fees for bad faith litigation. See footnote 2 of this opinion. The town appealed.

We begin by setting forth the applicable standard of review. "[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Shevlin* v. *Civil Service Commission*, 148 Conn. App. 344, 354, 84 A.3d 1207 (2014).

I

The town first claims that the court erred in finding that the council improperly reduced the defendant's

salary. This claim is relevant to the court's judgment pertaining to the defendant's counterclaim for breach of contract. The town contends that (1) it did not breach the agreement by reducing the defendant's salary, (2) the council had the authority to adjust salaries, and the agreement may not impinge on that authority, and (3) General Statutes § 7-421 does not afford the defendant a private cause of action or insulate him from the council's budgetary authority.[6] We disagree.

The following facts are relevant to our resolution of the town's claim. In his revised counterclaim, the defendant alleged that he and the town were parties to a written agreement under which the town employed him to perform certain services and established his base salary. In the revised counterclaim, the defendant also alleged that his "base salary may be increased on July 1 of each fiscal year, subject to the approval of the Town Council, which by Charter fixes the salaries of all mayoral appointees." (Internal quotation marks omitted.) He also alleged that, in early 2009, he made a contribution to Miron's reelection campaign. Thereafter, the council reduced his salary to a level below the salary specified in the agreement, and the town paid him a reduced salary from July 1, 2009, through the termination of his employment. The defendant alleged that the council reduced his salary in retaliation for his exercise of his political rights pursuant to General Statutes §§ 7-421 and 7-421b.

Moreover, the defendant alleged that although Miron terminated the agreement and excused the defendant from further performance after December 11, 2009, Harkins publicly accused the defendant of failing to appear for duty on December 15, 2009. In addition, he alleged that his "cash-out" was calculated on a base salary lower than that specified in the agreement. The defendant claimed double damages and attorney's fees pursuant to § 31-72. The town denied the material allegations of the counterclaim and pleaded numerous special defenses, including a fifth special defense that the defendant continued to be employed by the town after his salary was adjusted, he accepted the new terms moving forward, and he waived his rights or is estopped under the doctrine of laches from pursuing his claim. The defendant denied the fifth special defense and, at trial, placed into evidence an e-mail he sent to Miron in which he reserved his salary rights under the agreement.

In its memorandum of decision, the court stated that the defendant's counterclaim was for breach of the agreement, and that the town claimed that the charter permits the council to set salaries and to approve the salary schedule proposed by the mayor. The agreement, a July 11, 2008 letter signed by Miron and the defendant, was placed into evidence. The court set forth the following portions of the agreement in its decision.

"This letter sets forth the mutually agreed upon terms and conditions of your employment as Human Resources Director and constitutes the agreement between you and the [t]own . . . regarding such employment. This agreement shall remain in effect unless mutually modified and/or terminated except as to provisions that survive termination. . . .

"2. Your salary shall be $90,844 per annum effective July 1, 2008. Thereafter, the [m]ayor shall review and evaluate your performance annually within two (2) months from the beginning of the fiscal year of the [t]own. Based upon the annual performance evaluation, and at the [m]ayor's sole discretion and recommendation, the base salary may be increased on July 1 of each fiscal year, subject to the approval of the [council], which by Charter fixes the salaries of all mayoral appointees. . . .

"10. You acknowledge and agree that your employment is 'at will' and that nothing contained in this [a]greement shall be construed to require any cause for your removal or termination or to give you right to due process in the event of your suspension, removal or termination. . . .

"12. This [a]greement contains the entire understanding and agreement between the parties and supersedes any prior employment letter. This [a]greement may not be modified or waived except in writing and signed by [the defendant] and the [m]ayor of the [t]own. This [a]greement may not be assigned or otherwise transferred in whole or in part."

The court found that provisions in § 2 of the charter regarding the respective powers of the mayor and council also applied to the town's claim regarding the setting of the defendant's salary. After reviewing the agreement and the charter, the court found that both the mayor and the council had broad power regarding employment matters. The court agreed with the defendant that according "to the terms of the charter, the . . . council did not have the power to lower the defendant's salary as part of the annual budget process."[7] The court concluded that the defendant is entitled to compensation for his lost wages and payment for the difference between the "cash-out" he was paid and the "cash-out" he would have been paid had the council not lowered his salary. The court found additionally that pursuant to § 31-72, if an employer fails to pay an employee's wages, the employee is entitled to twice the lost wages plus attorney's fees. The court awarded the defendant $8481 in damages plus attorney's fees of $6800.[8]

The town's claim requires us to construe the agreement and the charter. "[I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a

provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if is clearly erroneous. . . . To identify and apply the appropriate standard of review, we must, therefore, initially determine whether the agreement . . . was ambiguous." (Citations omitted; internal quotation marks omitted.) *McKeon* v. *Lennon*, 147 Conn. App. 366, 373, 83 A.3d 639 (2013).

"In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 102–103, 84 A.3d 828 (2014).

On the basis of our review of the agreement, we conclude that the language of the agreement, which contains twelve numbered paragraphs, is not ambiguous with respect to the defendant's salary. The defendant's salary is addressed in paragraph 2 of the agreement, which states: "Your salary shall be $90,844 per annum effective July 1, 2008. Thereafter, the [m]ayor shall review and evaluate your performance annually within two (2) months from the beginning of the fiscal year of the [t]own. Based upon the annual performance evaluation, and at the [m]ayor's sole discretion and recommendation, the base salary may be increased on July 1 of each fiscal year, subject to the approval of the [council], which by Charter fixes the salaries of all mayoral appointees." Paragraph 2 clearly states the amount of the defendant's salary as of July 1, 2008, and sets forth the manner in which that salary may be *increased*. There is no mention in paragraph 2, nor in any other paragraph of the agreement, of *reducing* the defendant's salary. "In interpreting a contract courts cannot add new or different terms." *Cirrito* v.

*Turner Construction Co.*, 189 Conn. 701, 706–707, 458 A.2d 678 (1983).

Moreover, paragraph 12 of the agreement states in relevant part: "This [a]greement may not be modified or waived except in writing and signed by you and the [m]ayor of the [t]own." Pursuant to paragraph 12, the defendant's salary could not have been modified, unless the mayor recommended an increase that the council approved, or the parties reached a new agreement that was signed by the defendant and the mayor.

In support of its claim that the council could reduce the defendant's salary, the town relies on paragraph 10 of the agreement, which established that the defendant was an at-will employee. Paragraph 10 states: "You acknowledge and agree that your employment is 'at will' and that nothing contained in this [a]greement shall be construed to require any cause for your removal or termination or to give you right to due process in the event of your suspension, removal or termination."

In its appellate brief, the town argues that the "defendant's at will agreement with the [town] could have been terminated at any time, subject to the [sixty] day notice provision.[9] The contention that the defendant had a vested right to maintain his salary without prospective modification is simply not supported by the agreement and the law. . . . Further, the express language that the salary is subject to Town Council approval and that it fixes the salaries of all mayoral appointee[s] puts any employee on clear notice that the Town Council is empowered to adjust salaries yearly. . . . If the defendant objected to the reduction in his salary and did not want to remain under the new salary, the defendant could have left without liability, consistent with an at will agreement. Rather, the defendant chose to remain under the unambiguous change in his salary."[10] (Footnote added.) The town's reasoning is unpersuasive.

First, if the town's argument is that the at-will provision of the agreement permitted it to terminate the defendant's employment and then to rehire him at a reduced salary, the town had to demonstrate that it gave the defendant notice that it was terminating his employment under the agreement. See footnote 9 of this opinion. The court did not find that the town gave the defendant notice that it was terminating his employment or paid him his base salary and benefits for sixty days. Second, the town's argument that the defendant's salary was subject to council approval does not mean that the council could change the defendant's salary at will, much less reduce it. The agreement provided that the defendant's salary could be increased annually upon recommendation of the mayor, which was subject to council approval. Although the council was responsible for setting the town's annual budget, the charter did not give the council authority to change the defendant's

salary, except to increase it.

The "law" or cases, that the town relies upon also do not support its position as they are factually distinguishable; they concern implied contracts, not a written agreement. In *Fennell* v. *Hartford*, 238 Conn. 809, 814, 681 A.2d 934 (1996), our Supreme Court considered whether "the pension manual created an implied contract." In *Biello* v. *Watertown*, 109 Conn. App. 572, 573, 953 A.2d 656, cert. denied, 289 Conn. 934, 958 A.2d 1244 (2008), this court addressed an implied contract. "An implied contract is an agreement between parties which is not expressed in words but which is inferred from the acts and conduct of the parties." *Brighenti* v. *New Britain Shirt Corp.*, 167 Conn. 403, 406, 356 A.2d 181 (1974). In the present case, there is a written agreement signed by Miron and the defendant, and thus the cases cited by the town do not support its position.

The town contends that the agreement may not impinge on the provisions of the charter. "In construing a city charter, the rules of statutory construction generally apply." (Internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Education*, 214 Conn. 407, 423, 572 A.2d 951 (1990). "The officer, body or board duly authorized must act [on] behalf of the municipality, otherwise a valid contract cannot be created. Generally the power to make contracts on behalf of the municipality rests in the council or governing body . . . . Generally, no officer or board, other than the common council, has power to bind the municipal corporation by contract, unless duly empowered by statute, the charter, or authority conferred by the common council, where the latter may so delegate its powers . . . ." (Internal quotation marks omitted.) *Fennell* v. *Hartford*, supra, 238 Conn. 813.

We agree with the town that pursuant to §§ 2.2.5 and 5.8.1 of the Stratford Charter (charter),[11] the council had the power to approve the wage and salary schedules recommended by the mayor for administrative department employees.[12] We disagree, however, with the town's contention that the agreement impinged on the council's authority under the charter. Under the charter, the mayor is charged with the selection, appointment and hiring of department heads, and with recommending salaries and wages to the council for its approval. The agreement also required the mayor to submit the defendant's salary to the council for approval. When read together, the charter and the agreement are not inconsistent. The town's argument fails because once the council approved the defendant's salary as recommended by Miron and the salary was incorporated in the agreement, the only change the council could make to the defendant's salary was to increase it pursuant to the mayor's recommendation.

For the foregoing reasons, we reject the town's claim that the court erred in finding that the council improp-

erly reduced the defendant's salary.

## II

The town's second claim is that the court erred by holding that the mayor has the unilateral power to modify town employee's monetary benefits. We decline to review this claim.

In its brief on appeal, the town states that the court referenced §§ 1.2, 2.2.14, 5.6.6 and 6.2.1 of the charter "to support the conclusion that as long as he is mayor, [Miron] has broad authority to modify the terms of the defendant's employment agreement and to determine the categories and hours used to calculate the defendant's cash-out benefits upon termination." The town's brief does not identify the portion of the court's memorandum of decision to which it refers. Our review of the court's memorandum of decision discloses reference to the enumerated sections of the charter in that portion of the court's memorandum of decision concerning the town's claim for money had and received.

To prevail on a claim for money had and received, a plaintiff must prove *both* the lack of authority to authorize the payment *and* that it is inequitable for the recipient to retain it. *Stratford* v. *Castater*, supra, 136 Conn. App. 531. Because a cause of action for money had and received requires proof of two prongs, this court may affirm the judgment of the trial court on proof "that the payment was authorized or that its retention by the defendant is equitable under all of the circumstances." Id. In both *Castater* and *Stratford* v. *Wilson*,      Conn. App.     ,      A.3d      (2014), this court affirmed the judgments of the trial courts on the equitable prong and did not address whether Miron had the authority to authorize the defendants' "cash-outs." The cause of action in the present case is the same, and there are no material differences among the facts of the three cases. This court's previous resolution of the equitable prong of the town's claim for money had and received in *Stratford* v. *Castater*, supra, 528–32, is controlling, and we, therefore, need not address the town's claim regarding the mayor's authority.

## III

The town's third claim is that the court erred in finding that the defendant may in good conscience retain the "excess cash-out." We do not agree.

In count one of its complaint, the town alleged a cause of action sounding in money had and received. This court outlined the development of the common-law cause of action for money had and received in *Stratford* v. *Castater*, supra, 136 Conn. App. 529. "[W]hen money is paid by one on the basis of a mistake as to his rights and duties and the recipient has no right in good conscience to retain the money, an action of indebitatus assumpsit may be maintained to recover the money, regardless of whether the mistake was one

of fact or of law. . . . The action of indebitatus assumpsit for the recovery of money had and received and for money paid . . . is an action of the common law, but, to a great extent, an equitable action, adopted for the enforcement of many equitable, as well as legal rights." (Internal quotation marks omitted.) Id.

"The action for money had and received is an equitable action to recover back money paid by mistake where the payor is free from any moral or legal obligation to make the payment and the payee in good conscience has no right to retain it. Is the plaintiff in this action, as between it and the defendant, in equity and good conscience entitled to the money? If it is, then it is entitled to recover. The real ground of recovery is the equitable right of the plaintiff to the money." *Bridgeport Hydraulic Co.* v. *Bridgeport*, 103 Conn. 249, 261–62, 130 A. 164 (1925).

"We will reverse a trial court's exercise of its equitable powers only if it appears that the trial court's decision is unreasonable or creates an injustice. . . . [E]quitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Croall* v. *Kohler*, 106 Conn. App. 788, 791–92, 943 A.2d 1112 (2008).

The parties stipulated that the defendant was employed by the town pursuant to a written agreement and that Miron terminated the defendant's employment on December 11, 2009. Miron authorized the "cash-out" payment to the defendant. The town paid the defendant his accrued benefits in his last paycheck, and the benefits were subject to withholding and other deductions. In January, 2010, the town sent the defendant a W-2 form that included that "cash-out" income for social security purposes and itemized deductions.

In determining whether the defendant may keep the "cash-out" in good conscience, the court made the following factual findings. The defendant was the human resources director who met with Miron, the chief administrative officer, and the finance director to determine the "cash-outs" of those town employees whose employment was terminated. The defendant, however, did not participate in the calculation of his "cash-out." The town sent the defendant his W-2 form after Miron's term as mayor had ended. The defendant's W-2 form included the "cash-out" as part of his wages, and he paid taxes on the "cash-out." On the basis of the evi-

dence, the court determined that the defendant retained the "cash-out" in good conscience.

Our review of the record, including the parties' stipulation of facts and the court's findings, reveals that the town intentionally terminated the defendant's employment and that it knowingly—not mistakenly—paid him the "cash-out" authorized by Miron. The town also admitted those facts in its complaint and is bound by them. See *Rudder* v. *Mamanasco Lake Park Assn.*, *Inc.*, 93 Conn. App. 759, 769, 890 A.2d 645 (2006) (parties bound by their pleadings). The town confirmed the wages it paid the defendant by sending him a W-2 form that included the "cash-out." Approximately two weeks later, the town acting under the Harkins administration, caused a letter to be sent to the defendant informing him that the town was seeking to collect a debt predicated on the "cash-out." We agree with the court that the equities of this situation tip in favor of the defendant. "The plaintiff's change of mind and heart [with regard to the 'cash-out'] has come too late." *Monroe National Bank* v. *Catlin*, 82 Conn. 227, 230, 73 A. 3 (1909) (plaintiff sought to recover money voluntarily paid with knowledge of facts). We therefore conclude that the court's finding that the defendant retained the "cash-out" in good conscience was not erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

\* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] See *Stratford* v. *Wilson*, Conn. App. , A.3d (2014); *Stratford* v. *Castater*, 136 Conn. App. 522, 46 A.3d 945, cert. denied, 307 Conn. 903, 53 A.3d 218 (2012). This case and *Wilson* were tried together; the appeals to this court were argued on the same day.

[2] Because we conclude that the court properly awarded the defendant attorney's fees pursuant to General Statutes § 31-72, we need not decide whether the plaintiff engaged in bad faith litigation, and, if so, whether bad faith litigation provided an additional ground for the court to award the defendant attorney's fees.

[3] The court, *Hon. Howard T. Owens*, *Jr.*, judge trial referee, rendered judgment in favor of the defendant on the town's conversion count. In its memorandum of decision, the court stated that the town failed to address the claim in its pretrial brief and that it made no case for conversion. The court also referenced the findings and analysis of the trial court in *Stratford* v. *Castater*, Superior Court, judicial district of New Haven, Docket No. CV-10-6011629-S (March 15, 2011), aff'd, 136 Conn. App. 522, 46 A.3d 945, cert. denied, 307 Conn. 903, 53 A.3d 218 (2012).

In *Castater*, the court, *Lager*, *J.*, found that the town failed to make out a prima facie case because it failed to offer evidence to establish that Eric Castater's conduct with respect to his being paid the "cash-out" was unauthorized and that his "cash-out" injured the town. In fact, Judge Lager found that Castater was authorized to receive the payments and that the conversion claim failed on its merits. In the present case, the trial court found that the defendant believed that he was receiving an appropriate "cash-out" benefit and that he was authorized to receive the payment. In its brief on appeal, the town stated that it was withdrawing the conversion count.

[4] Miron lost his bid for reelection in November, 2009.

[5] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attor-

ney's fees as may be allowed by the court . . . ."

General Statutes § 31-76k provides in relevant part: "If an employer policy . . . provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave, and an employee is terminated without having received such accrued fringe benefits, such employee shall be compensated for such accrued fringe benefits exclusive of normal pension benefits in the form of wages in accordance with such . . . policy but in no case less than the earned average rate for the accrual period pursuant to sections 31-71a to 31-71i, inclusive."

[6] In its brief on appeal, the town acknowledges that the court did not address the § 7-421 issue in its memorandum of decision. Indeed, our review of the memorandum of decision reveals that the court merely recited the defendant's claim and testimony without reaching a legal conclusion as to the applicability of § 7-421 to the facts of this case. The town has failed to note where in the record it brought its jurisdictional claim to the attention of the court or that it sought an articulation from the court. See Practice Book § 66-5. Regardless of whether the town preserved the issue for appeal or whether the record is adequate for our review, the court did not award the defendant damages pursuant to § 7-421, but rather pursuant to § 31-72. Moreover, on the basis of our plenary review of the defendant's counterclaim; see *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 576, 966 A.2d 813 (construction of pleadings plenary), cert. denied, 292 Conn. 911, 973 A.2d 661 (2009); the defendant alleged a claim for breach of contract.

[7] The court noted the defendant's claims with regard to §§ 7-421 and 7-421b, and cited the language of those statutes and the defendant's testimony that the town violated the statutes by lowering his salary after he contributed to Miron's reelection campaign. Despite the defendant's claim and testimony, the court made no finding that the town violated the defendant's rights under the statutes nor did it make a finding as to why the council reduced the defendant's salary.

[8] The court stated that it carefully had calculated the defendant's claims for attorney's fees.

[9] Paragraph 5 of the agreement provides in relevant part: "In the event that the [t]own terminates your employment, written notice shall be given not less than sixty (60) calendar days in advance of the date of said termination, or in the alternative, the [t]own may terminate your employment without advance notice and pay you your full salary and benefits for the sixty (60) calendar day period immediately following your date of termination. In the event of termination in lieu of notice and payment as provided, you shall be immediately relieved of your duties. . . ."

[10] The defendant placed in evidence a copy of the e-mail he sent to Miron reserving his rights under the agreement.

[11] Section 2.2.5 of the Stratford Charter provides: "The Council shall fix the salaries of the Mayor and of all Council or Mayoral appointees. Prior to the first day of July during the year in which the regular election of the Mayor is held, the Council shall approve by ordinance the salary for the Mayor, to be effective with the commencement of the Mayoral term next following the election. The Mayor's salary shall not be subject to any further interim increase or decrease during said term of office. The Council shall further have the power to approve or disapprove wage and salary schedules recommended by the Mayor for administrative department employees."

Section 1.2 (13) of the Stratford Charter concerns the duties of the mayor and provides: "Selection, appointment and hiring of department heads, except as otherwise provided in this Charter."

Section 5.8.1 of the Stratford Charter provides: "The Mayor shall develop a wage and salary schedule for Town employees, which schedule shall be approved by the Town Council."

[12] The council apparently approved the defendant's salary as stated in the agreement, which was signed on July 11, 2009, subsequent to the beginning of the fiscal year.

Section 6.1.1 of the Stratford Charter provides: "The fiscal year of the Town shall commence July first of each year and expire the thirtieth day of June next succeeding."