******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARK MUKON *v.* ROBERT A. GOLLNICK
(AC 35454)

Lavine, Beach and Alvord, Js.

*Argued March 3—officially released June 24, 2014*

(Appeal from Superior Court, judicial district of New
Haven at Meriden, Oliver, J.)

*Barry T. Pontolillo*, for the appellant (defendant).

*Robert Shluger*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Robert A. Gollnick, appeals from the judgment of the court, rendered after a trial to the court, in this accounting malpractice action. On appeal, the defendant claims that the court erred in rendering judgment in favor of the plaintiff, Mark Mukon, and argues that the dissolution of the plaintiff's limited liability company did not automatically trigger the taxable event that resulted in the assessment of a use tax liability to the plaintiff.[1] We agree and therefore reverse the judgment of the trial court.

The record reveals the following facts that are not in dispute. The plaintiff was a managing member of a limited liability company, Sea Pearl Marine, LLC (company).[2] In February, 2007, the company purchased a ship's hull in Maine, and paid sales tax on the hull to the state of Connecticut. The company commenced construction of the vessel at issue with this hull, and used a resale certificate to defer payment of Connecticut sales tax on the additional items purchased to complete the vessel.

At all relevant times, the plaintiff was a client of the defendant, a certified public accountant. In November, 2009, the plaintiff sought advice from the defendant as to how to avoid paying the annual $250 limited liability company filing fee to the state. The defendant advised the plaintiff that the fee could be avoided by dissolving the company, and thereafter assisted the plaintiff in filing the dissolution paperwork with the state.

In April, 2010, the plaintiff reregistered the vessel in his name with the Department of Motor Vehicles.[3] In May, 2010, the plaintiff received a letter from the Department of Revenue Services (department), informing him that he had "been selected for an audit regarding [his] purchase" of the vessel and requiring him to provide the department "with proof of tax paid or documentation that supports the exempt status of [his] purchase." The department eventually determined that "there [was] no exception to satisfy [the] transaction," and assessed a use tax liability against the plaintiff. The plaintiff ultimately was required to pay the state $11,665.41.[4]

On July 8, 2011, the plaintiff brought a malpractice action against the defendant. The plaintiff claimed that he had "inquired of the defendant as to . . . [the potential] tax consequences to either [the company] or to [himself] upon [the] dissolution of [the company]," and that the defendant had informed him that the only tax consequences would be capital gains taxes when the vessel was sold. In light of the taxes that he was assessed by the department, the plaintiff asserted that the defendant was negligent in that the tax advice he provided was "false, inaccurate and incorrect, and caused the plaintiff to suffer monetary damages . . . ."

The defendant denied the plaintiff's substantive allegation, and claimed as a special defense that the plaintiff was contributorily negligent. The case was tried on October 17, 2012, and each party filed a posttrial memorandum. In a written decision released on February 15, 2013, the court found that the plaintiff had sufficiently established professional malpractice and that the defendant had failed to prove his special defense. The court rendered judgment against the defendant in favor of the plaintiff in the amount of $12,865.41.[5] This appeal followed.

On appeal, the defendant argues that the court's decision "is fatally flawed in that the court did not correctly apply the statutes of the state of Connecticut to the present fact pattern." He asserts that the "court clearly sets forth its error" in its findings of fact numbers seventeen and twenty-one because the dissolution of the company did not trigger the assessment of the use tax nor did the winding-up of the company require a transfer of the vessel to the plaintiff. The plaintiff maintains that the conclusions of the court are "legally and logically correct and find support in the facts set out in the memorandum of decision." We agree with the defendant.

The thrust of the plaintiff's argument before the trial court was that the dissolution of the company triggered an automatic transfer of the vessel from the company to the plaintiff, and that this automatic transfer triggered the tax liability. The court agreed with plaintiff's position and, in its finding of fact number seventeen, found that "[a]s a result of dissolving [the company], the plaintiff personally incurred a use tax liability of $16,621.57, including interest and penalties." Similarly, in its finding of fact number twenty-one, the trial court found that the "dissolution of the [company] and *automatic transfer* of the marine vessel to the plaintiff as the [company's] managing member triggered the taxable event that resulted in the assessment of the use tax liability to the plaintiff." (Emphasis added.) On the basis of its findings of facts, the court found that the plaintiff established professional malpractice by a fair preponderance of the evidence[6] and that "the defendant failed to exercise due diligence and prudence in focusing on potential income tax consequences and not the entire transaction."

We set forth our standard of review and the principles that guide our analysis. "[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the

record." (Internal quotation marks omitted.) *Shevlin* v. *Civil Service Commission*, 148 Conn. App. 344, 353–54, 84 A.3d 1207 (2014). Here, the court based its factual findings on its interpretation of the law governing the dissolution of limited liability companies, therefore we exercise plenary review of the court's conclusions of law.

The Connecticut Limited Liability Company Act (act), General Statutes § 34-100 et seq., governs the dissolution of a limited liability company and requires a winding-up of its affairs. See, e.g., General Statutes § 34-206 ("[a] limited liability company is dissolved *and its affairs shall be wound up* . . ." [emphasis added]). General Statutes § 34-208 (a) directs that the members or managers of the limited liability company undertake the responsibility for the tasks associated with the winding-up of the business and affairs of the limited liability company. Section 34-208 (b) sets forth those tasks, which include, in relevant order: "(1) [p]rosecute and defend suits; (2) settle and close the business of the limited liability company; (3) dispose of and transfer the property of the limited liability company; (4) discharge the liabilities of the limited liability company; and (5) distribute to the members any remaining assets of the limited liability company." The act further provides in relevant part: "Upon the winding up of a limited liability company, the assets shall be distributed as follows: (1) [p]ayment, or adequate provision for payment, shall be made to creditors . . . in satisfaction of liabilities of the limited liability company; (2) . . . to members or former members in satisfaction of liabilities for distributions under [General Statutes §§] 34-158 and 34-159; and (3) . . . to members and former members, first, for the return of their contributions and second, respecting their membership interests, in proportions in which the members share in distributions under [§] 34-158." General Statutes § 34-210.

The act does not provide that upon dissolution, the assets of a limited liability company are *automatically transferred* to the members of the limited liability company. To the contrary, General Statutes § 34-167 (a) clearly establishes that "[p]roperty transferred to or otherwise acquired by a limited liability company is property of the limited liability company and not of the members individually" and that "[a] member has no interest in specific limited liability company property." The dissolution of a limited liability company does not negate this provision or otherwise result in an automatic transfer of the limited liability company's assets to one of the individual members. Instead, the dissolution necessitates a prescribed winding-up process, and a member receives the limited liability company's property if, and only if, the member or manager winding-up the limited liability company has completed the applicable steps established by § 34-208 (b) and the assets are distributed in accordance with § 34-210.

Accordingly, there is no legal foundation for the court's conclusion that the dissolution of the company was accompanied by "an automatic transfer of [the vessel] to the plaintiff as the [company's] managing member."

Likewise, there is no basis for the court's conclusions that "as a result of dissolving [the company], the plaintiff personally incurred a use tax liability" or that the dissolution "triggered the taxable event that resulted in the assessment of the use tax liability." Sections 34-208 (b) and 34-210 expressly establish that the members or managers of a limited liability company are responsible for discharging the limited liability company's outstanding liabilities during the prescribed winding-up process. Accordingly, it is clear that it is not the dissolution, but rather the failure to conform to the requirements of the statutes, that can trigger a taxable event to the managing members.

Here, the plaintiff does not dispute that there was an outstanding sales tax liability on the vessel, and he testified before the court that he understood the tax deferral implications of using a resale certificate while constructing the vessel. Nevertheless, the record is clear that the plaintiff, as a managing member of the company, failed to discharge, pay, or make adequate provisions for payment in satisfaction of the outstanding tax liabilities of the company, as required by the winding-up process in the statutes, before reregistering the vessel in his own name. We therefore conclude that the court misconstrued the relevant limited liability company dissolution statutes, and that its subordinate findings of fact are rendered clearly erroneous.

The plaintiff continues to assert in this court that the defendant's tax advice was negligent because the tax at issue "became due and payable when the marine vessel was *automatically* transferred to the plaintiff *upon the dissolution* of the subject [company]." (Emphasis added.) He presented his cause of action against the defendant based upon this theory, and the trial court decided the matter using the law and facts that the plaintiff put before it. The plaintiff has provided no alternative grounds upon which to affirm the court's judgment, nor has he explicitly directed us to any aspect of his claim that remains unresolved. As we have established, there is no legal foundation for the dissolution theories propounded by the plaintiff; therefore, his malpractice cause of action, which was exclusively predicated upon these theories, must fail.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

[1] The defendant also claims that the court erred in rendering judgment for the plaintiff's recovery of use tax payments from the defendant because the plaintiff's "cause of action sought the recovery of sales tax payments." Because we reverse judgment on the basis of the defendant's first claim, we need not reach this issue.

[2] The plaintiff's wife, Melody Mukon, also was listed on the company's

tax return as a managing member of the company. She is not a party to this action.

[3] The vessel previously was registered in the name of the company. Sales tax was not collected at the time of reregistration because the plaintiff claimed an exemption.

[4] The plaintiff originally was assessed an individual use tax at 6 percent of the vessel's value, plus interest and penalty, for a total of $16,621.57. The plaintiff negotiated a settlement with the department in the amount of $11,665.41

[5] The plaintiff sought money damages including the $11,665.41 he paid to the state, $650 for the cost of additional accounting services, and $600 for attorney's fees to negotiate the tax, interest, and penalty ultimately assessed by the department. The amount awarded by the court is the sum of all of the damages claimed.

[6] "There are four essential elements to a malpractice action. . . . (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the cause of the plaintiff's injury." (Emphasis omitted; internal quotation marks omitted.) *Stuart* v. *Freiberg*, 142 Conn. App. 684, 703, 69 A.3d 320, cert. granted, 310 Conn. 921, 77 A.3d 142 (2013).